# United States Court of Appeals
## For the First Circuit

No. 16-2247

UNITED STATES OF AMERICA,

Appellee,

v.

FEDERICO DUCOUDRAY ACEVEDO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Barron, Selya, and Lipez,
Circuit Judges.

Linda Backiel on brief for appellant.
Rosa Emilia Rodríguez-Vélez, United States Attorney, Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, and Thomas F. Klumper, Assistant United States Attorney, Senior Appellate Counsel, on brief for appellee.

February 14, 2018

**BARRON**, **Circuit Judge**. Federico Ducoudray Acevedo ("Ducoudray"), formerly an attorney in Puerto Rico, appeals his convictions for tampering with a witness, victim, or an informant, 18 U.S.C. § 1512(b)(1), and for obstructing the due administration of justice, 18 U.S.C. § 1503. These convictions arise from a visit that Ducoudray made in August of 2012 to an alleged co-conspirator of one of Ducoudray's clients, who at the time was facing several criminal charges in both state and federal court. The government alleged that Ducoudray committed the underlying offenses by, during that visit, requesting that the co-conspirator "retract" the statements that he made to law enforcement that implicated Ducoudray's client.

On appeal, Ducoudray contends that there was not sufficient evidence to support the convictions. He argues, in the alternative, that a series of errors occurred at his trial that, he contends, show either singly or in combination that the convictions may not stand. We affirm both convictions.

**I.**

We reserve a discussion of the full set of facts, complicated as they are, for our discussion of the individual issues Ducoudray raises. For now, it suffices to recount those facts that make it possible to understand the charges underlying the convictions.

The relevant sequence of events begins on July 21, 2012. A federal criminal complaint was filed that day in the United States District Court for the District of Puerto Rico against Edwin Santana Hernández ("Hernández"), a client of Ducoudray. The complaint charged Hernández with being a participant in a drug trafficking conspiracy.

The complaint included a probable cause affidavit. The affidavit stated that Hernández's cousin, Julio Santana Castillo ("Castillo"), had already been arrested in New York as a participant in the same drug trafficking conspiracy in which Hernández was implicated. The affidavit also stated that Castillo was cooperating with federal law enforcement by providing law enforcement with evidence of Hernández's involvement in that conspiracy.

Hernández was arrested on the same day that the federal criminal complaint was filed against him. Two days later, Ducoudray provided a "notice of appearance" in that federal case indicating that he had been retained to serve as Hernández's attorney.

The next day, Castillo, who was being held at the time in a correctional facility in New York City on a New York state law charge of conspiracy to traffic narcotics, hired a defense attorney named Peter Frankel ("Frankel") to represent him. Over the course of the next week, Frankel met with Castillo in the

correctional facility, appeared in state court on Castillo's behalf in connection with the conspiracy charges that had been brought against Castillo, and was present at a proffer session with state and federal authorities during which Castillo confessed to his participation in the drug trafficking conspiracy.

Soon thereafter, on August 1, 2012, a grand jury in the United States District Court for the District of Puerto Rico indicted both Hernández and Castillo, as co-defendants. The indictment charged them with various counts related to the drug trafficking conspiracy in which they were alleged to have participated.[1]

The next key events for present purposes were as follows. On the same day that the federal indictment of Hernández and Castillo came down, August 1, 2012, Ducoudray left Puerto Rico and headed to New York City in hopes of visiting with Castillo at the correctional facility where Castillo was being held. Then, the next day, according to Castillo's testimony at Ducoudray's trial, Ducoudray met with Castillo at the correctional facility and told him that he should "retract [the] story" that he had told to law enforcement, as "Hernández was going to trial, and [Castillo's

---

[1] This indictment was docketed as a different matter than the matter in which the federal criminal complaint had previously been filed against Hernández, although the case previously filed against Hernández was merged into the newly docketed case on August 1, 2012.

retraction] was the only way [Hernández] was going to beat [his] case."  In addition, Castillo testified, Ducoudray first told Castillo that he had called Castillo's lawyer several times and that Castillo's lawyer never picked up.  But, Castillo testified, Ducoudray later in the conversation "changed the story" to say that Castillo's lawyer had, in fact, given Ducoudray permission to speak with Castillo.

Ducoudray ended the meeting, according to Castillo's testimony, by telling Castillo that he should not tell his brother or his attorney about the meeting.  But, Castillo testified, after the visit Castillo feared for his safety and told his brother about the visit.

Soon after meeting with Castillo, moreover, Ducoudray contacted Frankel, according to Frankel's testimony at Ducoudray's trial.  Frankel testified that, when the two men talked, Ducoudray identified himself as Hernández's attorney and asked Frankel whether Castillo was cooperating with law enforcement but that Ducoudray did not reveal that he was in New York City or that he had just visited Castillo.  Frankel also testified that, after he later learned from Castillo's brother that there had been an unauthorized visit by a lawyer to Castillo, Frankel called Ducoudray.  According to Frankel's testimony, Ducoudray initially denied that the visit had occurred, stating that he was in Puerto Rico, but, when pressed by Frankel, admitted that he had visited

- 5 -

and spoken with Castillo, though he stated it was only to "find out who [Castillo's] lawyer was."

The next morning, Frankel testified, he contacted the Assistant United States Attorney ("AUSA") prosecuting Hernández's case and reported the incident to that AUSA, both orally and later by email. The email included an account of what Castillo had told Frankel about what Ducoudray had said to Castillo during their meeting at the correctional facility.

In 2015, Ducoudray was indicted on federal charges of obstructing the due administration of justice[2] and tampering with a witness, victim, or an informant,[3] in connection with his visit to Castillo. A jury trial was held in January 2016, after which Ducoudray was convicted of both offenses.[4] He now appeals.

---

[2] "Whoever corruptly, . . . impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be punished . . . ." 18 U.S.C. § 1503.

[3] "Whoever knowingly . . . corruptly persuades another person, or attempts to do so, . . . with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding . . . shall be fined under this title or imprisoned . . . ." 18 U.S.C. § 1512(b).

[4] Prior to trial, in October 2012, Castillo and Hernández entered into plea agreements with respect to the federal drug charges against them. They were both sentenced in 2013, with Castillo receiving a reduced sentence recommendation due to his cooperation with law enforcement.

## II.

We first address Ducoudray's contention that the District Court wrongly denied his motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, as to both charges.[5]  To succeed on his Rule 29 motion, Ducoudray must show that the evidence presented at trial, even when viewed in the light most favorable to the government, did not suffice to prove the elements of the offenses beyond a reasonable doubt.  See United States v. Gabriele, 63 F.3d 61, 67 (1st Cir. 1995).

In order to convict Ducoudray of a violation of 18 U.S.C. § 1512(b)(1), the government had to prove beyond a reasonable doubt that Ducoudray "(i) knowingly (ii) . . . corruptly persuaded [Castillo], or attempted to do so . . . (iii) with intent to influence[, delay, or prevent the] testimony [of Castillo] (iv) in an official proceeding."  United States v. Cruzado-Laureano, 404 F.3d 470, 487 (1st. Cir. 2005).  We have previously held, moreover, that "[t]rying to persuade a witness to give false testimony counts as 'corruptly persuading' under § 1512(b)[(1)]."  Id.

_____

[5] The Rule 29 motion Ducoudray filed appeared to be limited to a motion for acquittal on just the 18 U.S.C. § 1512(b)(1) offense.  However, the District Court did reference the criminal statutes underlying both offenses in its ruling denying the motion. On appeal, Ducoudray appears to argue that his Rule 29 motion encompassed the convictions for both offenses, and the government does not contest this characterization.  For the purpose of our Rule 29 analysis, therefore, we assume without deciding that Ducoudray's Rule 29 motion below concerned both offenses.

In order to convict Ducoudray of violating 18 U.S.C. § 1503, the government had to prove beyond a reasonable doubt the following: that there was a pending judicial proceeding; that Ducoudray had notice of the proceeding; and that Ducoudray acted corruptly with the intent to influence or obstruct, or endeavored to influence or obstruct, the proceeding. See United States v. Cueto, 151 F.3d 620, 633 (7th Cir. 1998); United States v. Frankhauser, 80 F.3d 641, 650-51 (1st Cir. 1996). The government contends that proof that Ducoudray tried to persuade Castillo to provide false testimony at Hernández's criminal trial would suffice to support Ducoudray's conviction for violating § 1503, just as it would suffice to support his conviction for violating § 1512(b)(1). Ducoudray makes no argument to the contrary.

Accordingly, setting to one side any other theories of criminal liability that the parties address in their briefing to us, Ducoudray's challenge to the denial of his Rule 29 motion fails if the evidence at trial sufficed to show that, in Ducoudray's words, he "knowingly attempted to persuade [Castillo] to violate the law by providing false testimony." Our review of the denial of the motion is de novo. United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000).[6] But that review is "quite limited," as

_____

[6] Ducoudray submitted a Rule 29 motion at the close of the government's evidence, but he did not renew his Rule 29 motion after the verdict. Contrary to the government's assertion that this failure to renew means the standard of review should be "for

- 8 -

"we must affirm unless the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt." Id. (quoting United States v. Paradis, 802 F.2d 553, 559 (1st Cir. 1986)). Moreover, "[i]n applying this standard, 'no premium is placed upon direct as opposed to circumstantial evidence; both types of proof can adequately ground a conviction.'" Id. (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)). Finally, "[a] trial court in passing on [a Rule 29] motion considers all of the evidence it has admitted, and . . . it must be this same quantum of evidence which is considered by the reviewing court." United States v. Diaz, 300 F.3d 66, 77 (1st Cir. 2002) (quoting Lockhart v. Nelson, 488 U.S. 33, 41-42 (1988)). Thus, on appeal, "[u]nder Rule 29, we must examine 'all the evidence submitted to the jury, regardless of whether it was properly admitted.'" Id. (quoting United States v. Gonzalez-Sanchez, 825 F.2d 572, 588 (1st Cir. 1987)).[7]

---

clear and gross injustice only," because Ducoudray did not put on any evidence in his defense he did not have to renew his motion in order to preserve the issue. See Hernández, 218 F.3d at 63 n.3. As such, our review is de novo. See id. at 64.

[7] We thus reject Ducoudray's contention that we must ignore, or discount the weight to be given, certain evidence in evaluating his challenge to the denial of his Rule 29 motion due to the errors that he alleges the District Court made at trial with respect to that evidence. Later in this opinion, however, we do consider the challenges that Ducoudray makes to those trial rulings, but only in connection with Ducoudray's contention that those alleged

Applying these principles, we first consider Ducoudray's contention that the evidence did not supportably show beyond a reasonable doubt that Ducoudray "knew . . . [Castillo] was a witness in Hernández's pending proceeding."  In considering that contention, however, we must keep in mind that "[t]he key is not whether the defendant knows or doesn't know that someone is a 'witness.'"  See United States v. Misla-Aldarondo, 478 F.3d 52, 69 (1st Cir. 2007).  The key is whether the defendant knew that the person might be providing testimony in an upcoming official proceeding that the defendant's actions were likely to affect.  See id. (interpreting § 1512(b) and explaining that the inquiry is into "whether [the defendant] is intending to head off the possibility of testimony in an 'official proceeding'"); United States v. Aguilar, 515 U.S. 593, 599 (1995) (holding, with respect to intent to influence, obstruct, or impede testimony in an official proceeding under § 1503, a defendant must have "knowledge that his actions are likely to affect the judicial proceeding").

Here, the government put forth sufficient evidence from which a jury could find "that [Ducoudray] knew that an official proceeding had begun [against Hernández], or that he believed one to be likely in the future," Misla-Aldarondo, 478 F.3d at 69 (footnote omitted).  The government also put forth sufficient

errors provide a basis, either individually or in combination, for vacating his convictions.  See infra §§ III-IV.

- 10 -

evidence from which a jury could reasonably conclude that Ducoudray knew that Castillo was likely to be a witness for the government in that proceeding.

That evidence included a copy of the notice of appearance that Ducoudray filed in federal court confirming his representation of Hernández in the federal case against him. That evidence also included Castillo's testimony about Ducoudray's request that Castillo "retract" his statements to law enforcement so that Hernández could "beat his case" at trial. After all, a jury could reasonably conclude from this testimony that Ducoudray was concerned about getting Castillo to change his story to help Hernández "beat his case" because Ducoudray thought that Castillo was likely both to testify as a witness against Hernández at trial and to provide testimony that would help the government to convict Hernández. Hernández, 218 F.3d at 64 (explaining that "all reasonable inferences [are] made in the light most favorable to the government" (quoting United States v. Loder, 23 F.3d 586, 590 (1st Cir. 1994))); Diaz, 300 F.3d at 77 ("In assessing the sufficiency of the evidence under Rule 29, 'we view the evidence and draw reasonable inferences in the light most favorable to the verdict.'" (quoting United States v. McGauley, 279 F.3d 62, 66 (1st Cir. 2002)))._[8]

---

[8] Ducoudray also contends that Castillo's testimony cannot suffice to sustain the verdicts because he was a "biased witness,"

- 11 -

We turn, then, to the question of whether the evidence also sufficed to show that Ducoudray "knowingly" sought to persuade Castillo to give false testimony, if need be, at the upcoming trial of Hernández. Ducoudray's chief argument that the evidence did not suffice in that regard is that "[t]he prosecution made no effort to show that . . . Ducoudray knowingly asked [Castillo] to retract truthful statements." He contends the evidence suffices at most to show that Ducoudray was merely asking Castillo either to not "falsely implicate[]" Hernández or to invoke a valid Fifth-Amendment privilege against testifying. In connection with this contention, Ducoudray argues the testimony that he told Castillo to "accept [his] responsibilities" shows that, in asking Castillo to "retract" what he had told authorities, Ducoudray was merely asking Castillo to "correct what [Hernández] had told [Ducoudray] were lies."

We must, however, consider the evidence in the light most favorable to the verdict. Hernández, 218 F.3d at 64 (explaining that the court of appeals "must uphold any verdict that is 'supported by a plausible rendition of the record'"

who was cooperating with the government. But, in reviewing the denial of a Rule 29 motion, we do not "weigh the evidence or make credibility judgments; these tasks are solely within the jury's province." Hernández, 218 F.3d at 64. Insofar as Ducoudray is also challenging the District Court's failure to provide a requested cooperating witness jury instruction, we separately address that argument later in this opinion. See infra § III.B.

- 12 -

(quoting Ortiz, 966 F.2d at 711)). In addition, "if the evidence can be construed in various reasonable alternatives, the jury is entitled to freely choose from among them." United States v. Smith, 680 F.2d 255, 259 (1st Cir. 1982). Furthermore, "the government need not present evidence that precludes every reasonable hypothesis inconsistent with guilt in order to sustain a conviction." Hernández, 218 F.3d at 64 (quoting Loder, 23 F.3d at 590).

When we review the record from this verdict-friendly perspective, it is clear that the evidence did not require the jury to view Ducoudray's attempt to persuade Castillo to "retract" his statements to authorities as merely a request to testify truthfully or to invoke a valid privilege. Most significantly, Castillo testified that he understood the "retract" statement not to be advice that he should invoke a Fifth-Amendment right, but rather to be a request that he lie to authorities to help Hernández to "beat his case" at trial. Furthermore, Castillo testified that, during the same conversation in which the "retract" statement was made, he had told Ducoudray that what he had told authorities about Hernández's culpability for the conspiracy was the truth. Thus, the jury could supportably find that, in making the request to "retract" the statement, Ducoudray was not merely requesting Castillo to stay silent or tell the truth, but instead, if need

- 13 -

be, to lie in his own testimony at Hernández's trial to enable Hernández to "beat his case."

The reasonableness of such a conclusion about the intention behind Ducoudray's request to Castillo is bolstered by the ample record evidence that supports the conclusion that Ducoudray was trying to hide the fact of his visit to Castillo. That evidence ranges from evidence that shows that Ducoudray entered a false address in the visitor log of the correctional facility at which he visited Castillo, to evidence that shows that Ducoudray lied to Castillo about Castillo's lawyer giving Ducoudray permission to speak with Castillo, to evidence that shows that Ducoudray told Castillo not to tell anyone about the visit, to evidence that shows that Ducoudray falsely claimed that he had not made the visit when Frankel initially asked him about it.

To be sure, a jury was by no means required to conclude that Ducoudray sought to conceal his visit because he had asked Castillo to lie. Perhaps, as Ducoudray posits in his reply brief, the jury could have found that Ducoudray was "aware[] that he was at least skirting a professional rule" -- namely Model Rule 4.2 of the American Bar Association Model Rules of Professional Conduct ("Rule 4.2")[9] -- and thus that he "act[ed] surreptitiously [only] in order to avoid potential professional problems."

_____

[9] Rule 4.2 states that "[i]n representing a client, a lawyer shall not communicate about the subject of the representation with

But, a jury was entitled to draw a less favorable inference. And, thus, the evidence supports the convictions. See Misla-Aldarondo, 478 F.3d at 69 (interpreting § 1512(b)). For, even if, as Ducoudray posits, there might be some other "reasonable hypothesis" with respect to his actions that is "inconsistent with guilt," that possibility, on this record, does not reveal the evidence to be insufficient. Accordingly, we conclude that Ducoudray's challenge to the denial of his Rule 29 motion fails.[10]

---

a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." Model Rules of Prof'l Conduct r. 4.2 (Am. Bar Ass'n 2016).

[10] In light of the evidence just described, Ducoudray's challenge to the Rule 29 motion fails even if we assume that, as he contends, the District Court was mistakenly of the view both that, in visiting Castillo, Ducoudray violated Rule 4.2 and that such a violation "was relevant to proof of intent" with respect to either offense. But, wholly apart from whether there was evidence to support a finding that Ducoudray violated the prohibition set forth in Rule 4.2, a jury could have reasonably found from the evidence that we have described above that Ducoudray knew that Castillo was likely to testify at Hernández's trial and that Ducoudray encouraged Castillo, if need be, to lie in providing that testimony.

Moreover, because the evidence suffices to support the convictions apart from whether the evidence reveals that Ducoudray violated Rule 4.2, we need not address Ducoudray's additional argument that the District Court erred in denying his Rule 29 motion for the separate reason that there was no evidence that Ducoudray knew that Castillo was represented in the "same matter" as Hernández and thus that there was no basis for finding that Ducoudray violated Rule 4.2. We do address later in this opinion, however, Ducoudray's challenge to the supplemental jury instruction concerning Rule 4.2, see infra § III.D, including his contention that the instruction was unwarranted by the facts.

Ducoudray contends in the alternative that, even if his convictions need not be reversed due to insufficiency of the evidence, they must be vacated due to various trial errors that the District Court made. We consider these various claimed trial errors in turn.

**A.**

Ducoudray first argues that the District Court erred when it admitted into evidence the email that Frankel sent to the AUSA and certain testimony that Frankel provided at trial, insofar as this evidence purported to describe what Castillo told Frankel concerning Castillo's conversation with Ducoudray. Ducoudray contends that the email and the testimony -- by offering that description -- were inadmissible hearsay under Federal Rule of Evidence 802 and that the erroneous admission of this evidence was not harmless. In this regard, Ducoudray contends that this evidence had the prejudicial effect of lending credibility to statements of Castillo, "a convicted felon," by allowing such statements to be repeated through "the modulated voice of an attorney, practiced in the art of addressing judges and juries."

"We review the legal interpretation of a rule of evidence de novo, but the decision to admit or exclude evidence is reviewed for an abuse of discretion." United States v. Phoeun Lang, 672 F.3d 17, 23 (1st Cir. 2012). In addition, we review any

- 16 -

"subsidiary fact-finding" that bears on the issue "for clear error." See United States v. Burgos-Montes, 786 F.3d 92, 114 (1st Cir. 2015).

**1.**

We start with Ducoudray's challenge to the Frankel testimony. That testimony concerned what Castillo told Frankel about what Ducoudray "advised" Castillo during his visit with him. That testimony also concerned what Ducoudray told Castillo during that visit with respect to "whether or not . . . Ducoudray had spoken to [Frankel] prior to [that] visit."

The problem for Ducoudray is the following. At first Ducoudray made a hearsay objection to the admission of any testimony from Frankel concerning the content of Castillo's conversation with Ducoudray. But, before Frankel actually testified as to what Castillo told him, Ducoudray's counsel then reversed course by telling the District Court that "whatever was covered in direct examination or cross-examination of [Castillo] could be covered by [Frankel]," because "[i]t would be hearsay, but it would be admissible." As the record shows that Castillo had testified on direct examination and cross-examination about his conversation with Ducoudray at the correctional facility, we thus agree with the government that Ducoudray waived his hearsay objection to the Frankel testimony insofar as it purported to relay

what Ducoudray had said to Castillo during the visit.  See United States v. Sánchez-Berríos, 424 F.3d 65, 74 (1st Cir. 2005).

**2.**

We turn, then, to the email that Frankel sent.  The government acknowledges that Ducoudray preserved his hearsay objection to the admission of the email.  The government contends, however, that even if the email was improperly admitted, any error was harmless.  We agree.  Ducoudray does not contend on appeal that the email described any statements attributed to Castillo that exceeded the scope of Frankel's testimony about what Ducoudray or Castillo had said during their meeting.  Thus, because Ducoudray waived his challenge to the Frankel testimony, any error in admitting the email was harmless.  See, e.g., United States v. Vigneau, 187 F.3d 70, 78-79 (1st Cir. 1999); United States v. Fulmer, 108 F.3d 1486, 1502 (1st Cir. 1997).

**B.**

Ducoudray also challenges the jury instructions.  But here, too, we find Ducoudray's arguments unpersuasive.

Ducoudray first challenges the District Court's refusal to grant his request to give the jury a portion of the District Courts of the First Circuit Pattern Criminal Jury Instruction 2.08 "on the caution due testimony witnesses cooperating under an

agreement with the prosecution."[11] Ducoudray argues that the District Court's refusal to give his requested instruction was in error because Castillo was a cooperating witness. Ducoudray points out that Castillo "testified in [Ducoudray's] case as a result of his status as an accomplice in another [case -- the case against Hernández --], in which he signed a plea and cooperation agreement."

Ducoudray further contends that he was prejudiced by the District Court's refusal to give this "caution due" instruction. As he explains, even though "[t]he defense theory hung upon the lack of credibility of [Castillo]'s testimony," "the jury never learned the legal principle that [Castillo]'s testimony should be received with 'particular caution' because he 'may have had reason to make up stories or exaggerate . . [sic] because he wanted to help himself.'"

Ducoudray concedes, however, that, insofar as he failed to object or renew his request for this instruction at trial after it had been denied, then our review is only for plain error. And,

---

[11] The instruction as requested by Ducoudray read: "You have heard the testimony of [Castillo]. He provided evidence under agreements with the government[.] Some people in this position are entirely truthful when testifying. Still, you should consider the testimony of [Castillo] with particular caution. He may have had reason to make up stories or exaggerate what others did because he wanted to help himself. You must determine whether the testimony of such a witness has been affected by any interest in the outcome of this case, any prejudice for or against the defendant."

because we find that he did so fail, Ducoudray must overcome the hurdle of plain error review, which "nowhere looms larger than in the context of alleged instructional errors."  See United States v. Paniagua-Ramos, 251 F.3d 242, 246 (1st Cir. 2001).[12]

To "vault this hurdle," Ducoudray must show "that an error occurred," "that the error was clear or obvious," "that the error affected his substantial rights," and "that the error so seriously impaired the fairness, integrity, or public reputation of the proceedings as to threaten a miscarriage of justice."  Id. We have made it clear, moreover, that "a showing of 'mere possibilities [is] not enough' to prove that an instructional error affected a defendant's substantial rights."  United States v. Rivera-Izquierdo, 850 F.3d 38, 44 (1st Cir.), cert. denied, 137 S. Ct. 2204 (2017) (quoting United States v. Procopio, 88 F.3d 21, 31 (1st Cir. 1996)).

Here, in light of the fact that the requested instruction would have only cautioned the jury that Castillo might have had "reason to make up stories or exaggerate" to "help himself," we do not see how Ducoudray can show on this record that the "outcome of the case would likely have changed" if the omitted instruction had been given.  Id. (quoting United States v. Colon, 744 F.3d 752,

---

[12] We, therefore, need not address the government's argument that Ducoudray waived appellate review of this challenge due to his actions below.

758 (1st Cir. 2014)).  Ducoudray does not dispute that he visited Castillo and asked him to "retract" his statements to law enforcement.  He contends instead that he was not asking Castillo to lie.  But Castillo's less innocent interpretation of Ducoudray's "retract" request was bolstered circumstantially by the wealth of evidence indicating that Ducoudray sought to conceal his visit with Castillo.

The conclusion that Ducoudray has failed to show the required effect on his substantial rights, draws further support from the fact the District Court did instruct the jurors that they "[did not] have to accept the testimony of any witness if [they] did not] find the witness credible" and that they should consider a witness's "apparent fairness or any bias that they may have displayed" and "any interest [they] may discern that [a witness] may have had in the outcome of the case."  See United States v. Carr, 5 F.3d 986, 992 (6th Cir. 1993).  Given that "we customarily assume that jurors follow the instructions given to them by the district court," United States v. Rodríguez, 735 F.3d 1, 12 (1st Cir. 2013), and that the jury had been apprised of both the evidence of Castillo's plea agreement (including its terms) and his cooperation with law enforcement, those general instructions provided a basis for the jury to be on the lookout for Castillo's potential bias.

Accordingly, on this record, "it would be pure speculation to conclude that the [failure to provide the 'caution due' instruction] had any effect on deliberations," and "[s]uch speculation is insufficient to ground a successful claim that a clear error affected the defendant's substantial rights." United States v. McFarlane, 491 F.3d 53, 61 (1st Cir. 2007); see also Carr, 5 F.3d at 992 (finding no error in the trial court's failure to give a particular credibility instruction where the court had given general credibility instructions that "adequately informed the jury regarding the credibility of witness testimony"). Nor does Ducoudray identify any authority suggesting otherwise. We thus find no plain error.

## C.

Ducoudray separately argues that the instructions for the offense of tampering with a victim, witness, or an informant under 18 U.S.C. § 1512(b)(1) misstated the offense. He points to the fact that the District Court rejected the Third Circuit pattern instruction regarding the specific intent element of that offense. He also contends that the failure to give that instruction was especially problematic because of the way that the District Court

described the offense and because the District Court also gave a supplemental instruction on Rule 4.2.[13]

But, here, too, we find that the challenge to the District Court's instruction fails. Prior to instructing the jury on this count, the District Court modified the instruction that the District Court intended to give the jury by including some additional text regarding the meaning of "corruptly persuades" in light of concerns that Ducoudray raised. The District Court then announced the text of the instruction that would be (and was) provided to the jury. In response, Ducoudray's counsel affirmatively stated that he had "no objection." We thus find that Ducoudray waived this challenge. See United States v. Hansen, 434 F.3d 92, 101 (1st Cir. 2006).

**D.**

That brings us to Ducoudray's final challenge to the jury instructions, which concerns the supplemental jury

---

[13] In his opening brief, Ducoudray states that his "arguments [with respect to the tampering with a victim, witness, or informant count] concerning the definition of 'corruptly' . . . apply with equal force to [the obstructing the due administration of justice count]." However, Ducoudray does not explain why his argument concerning the instruction on the "corruptly persuades" element of the offense of tampering with a victim, witness, or informant would be applicable to the distinct jury instruction concerning the "corruptly" element of the offense of obstructing the due administration of justice. Accordingly, we find the argument waived. See United States v. Zannino, 895 F.2d 1, 17 (1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

- 23 -

instruction that the District Court gave regarding Rule 4.2.  The
instruction stated:

> The Cannons of Professional Conduct for
> Lawyers provide that, while representing a
> specific client, the lawyer shall not
> communicate about the subject of the
> representation with another defendant whom the
> lawyer knows to be represented by another
> lawyer in the matter, unless the lawyer has
> the consent of the other lawyer or is
> authorized to do so by law or a court order.
> These Canons are part of the Local Rules of
> this Court and have the force of law.

The District Court, with respect to this instruction, did not
instruct the jury that it had to find whether or not a violation
of Rule 4.2 occurred.

Ducoudray attacks the Rule 4.2 instruction on a number
of grounds.  None, however, has merit.

Ducoudray first argues that the instruction on Rule 4.2
"was unwarranted by the facts."  He contends that "Frankel never
represented [Castillo] in any federal case."  He also contends
that the record does not support the finding that Ducoudray knew
that Castillo was a defendant in the same case as Hernández.  He
argues, therefore, that in meeting with Castillo he could not
possibly have been violating Rule 4.2.

It does not appear that Ducoudray raised this
"unwarranted by the facts" objection to the Rule 4.2 instruction
below.  But, even if our review of the District Court's decision

to give this instruction on this record is only for an abuse of discretion, we find none. See United States v. Anguiano-Morfin, 713 F.3d 1208, 1209 (9th Cir. 2013) ("We review for an abuse of discretion whether [a jury instruction] has some foundation in the evidence." (internal quotation marks omitted)).

Castillo testified that Ducoudray told him that Ducoudray had permission from Castillo's lawyer to speak with Castillo. That statement reasonably provides circumstantial evidence that Ducoudray understood Castillo to be represented in the federal matter, especially when that statement is considered in the context of the tight timing between Castillo being named in the federal indictment with Hernández and Ducoudray's decision to go visit Castillo in the correctional facility in New York City. Moreover, when the fact of Castillo's representation came up during the conversation between Ducoudray and Castillo, the record supportably shows that Ducoudray did not stop the conversation. In addition, Frankel, Castillo's lawyer, testified that he represented Castillo with respect to the federal charges and that he had not given Ducoudray permission to speak with Castillo.[14]

_____

[14] Ducoudray separately contends that, at the time of his visit with Castillo, Castillo "was simply not 'another defendant who the lawyer knows to be represented by another lawyer in the matter,'" because the sealed indictment charging both Castillo and Hernández was not entered on the docket until the day of Ducoudray's visit with Castillo. But, Ducoudray does not identify where the record shows that he made the argument below that the timing of the sealed indictment's entry into the docket somehow

Thus, the record clearly provides "some foundation," id., for finding that Frankel did represent Castillo with respect to the federal charges against Castillo, that Ducoudray understood Castillo to be a represented co-defendant in the same matter as Hernández, and that Ducoudray nevertheless chose to speak with Castillo without "the consent of [Castillo's] lawyer" in that matter or "authoriz[ation] to do so by law or a court order." Model Rules of Prof'l Conduct r. 4.2.

Ducoudray argues, in the alternative, that the instruction was given in error because the jury was in no position to determine what conduct would constitute a violation of Rule 4.2. Here, too, Ducoudray's challenge to the instruction was not apparently made below. But, once again, even if we review the instruction for an abuse of discretion, see United States v. Gonzalez, 570 F.3d 16, 21 (1st Cir. 2009), we find none.

Ducoudray's challenge on this score appears to rest entirely on his assertions in his brief about Rule 4.2's ambiguity. But, Ducoudray points to no authority to support his contention that a jury may not be permitted to pass on whether a professional rule such as Rule 4.2 was violated simply due to possible

_____

precludes a finding that, at the time of his visit with Castillo, Ducoudray had knowledge that Castillo was a defendant in the same case as Hernández. And, in any event, the evidence discussed above permitted the jury to infer that Ducoudray did know that Castillo was represented by Frankel in the federal matter, notwithstanding the timing of the entry on the docket of the sealed indictment.

uncertainty about what the rule prohibits. Moreover, the government identifies precedents in which juries have been permitted to consider the ethical obligations of attorneys under seemingly similar professional rules, which contain their own ambiguities. See, e.g., United States v. Machi, 811 F.2d 991, 1000-02 (7th Cir. 1987). Accordingly, and in light of the fact that jury was not instructed that it had to make a determination regarding whether Ducoudray violated Rule 4.2 or not, we do not see how we could conclude, based on what Ducoudray has argued in this regard, that the District Court abused its discretion in giving this instruction.

Ducoudray's final challenge to the instruction regarding Rule 4.2 is that it improperly "relieved the prosecution of its burden to prove the element of corruption at the heart of both counts of the indictment by allowing the jury to rely upon its view of whether [Rule 4.2] was violated to find the required mens rea of both offenses."[15] Ducoudray further contends that this instructional error is one of law and should be reviewed de novo.

---

[15] In his opening brief, Ducoudray makes only passing reference to the additional argument that he had no opportunity at trial to "fairly address" the purported Rule 4.2 violation "with facts and argument" or to argue that any violation of Rule 4.2 was not the corrupt intent charged in the indictment. Thus, we regard this underdeveloped argument as waived. See Zannino, 895 F.2d at 17. And, in any event, the record reveals that at the beginning of the second day of trial and prior to Frankel's testimony (and even before the close of the government's evidence), the District Court informed the parties that it would be providing an

But, the instruction, as written, did not tell the jury that it had to find that proof of the violation of Rule 4.2 in and of itself would satisfy any element of either of the offenses that Ducoudray was charged with committing. Nor, by terms, did the instruction even tell the jury that proof of such a violation could in and of itself satisfy any such element. Accordingly, this challenge is ultimately to the potentially misleading nature of the instruction's wording, and so our review of this preserved challenge to the instruction is only for abuse of discretion. See Gonzalez, 570 F.3d at 21.[16]

The government contends that the District Court did not err in providing this instruction. In so arguing, the government relies on the explanation that the District Court gave when it addressed this issue in the context of a post-conviction motion for bail by Ducoudray. There, the District Court stated that the

_____

instruction concerning Rule 4.2. Additionally, the record reveals no objection was offered by Ducoudray to the inclusion of the Rule 4.2 instruction on the grounds that he lacked the opportunity to introduce or elicit evidence to rebut a purported Rule 4.2 violation.

[16] Below, Ducoudray requested the District Court change the "have the force of law" language in the instruction to "carry enforceability" by arguing that while Rule 4.2 embodies a "rule of ethics" and describes conduct that would be "improper" and "unethical" for a lawyer to undertake, a violation of Rule 4.2 by a lawyer is "not illegal" because Rule 4.2 is "not a rule of law." Ducoudray, however, does not raise this argument in his briefing on appeal, and so we do not consider it. See United States v. Bauzó-Santiago, 867 F.3d 13, 21 (1st Cir. 2017).

- 28 -

instruction "did not tell the jury that [Ducoudray's] alleged conduct was, in fact, an ethical violation, and a violation of law," "did not suggest an absolute prohibition on legal visits to represented persons," and "did not direct[] the jury to determine that [Ducoudray] had the requisite mens rea."  United States v. Ducoudray-Acevedo, Criminal No. 15-166 (ADC), 2017 WL 1286783, *3 (D.P.R. Apr. 5, 2017) (internal quotation marks omitted).  Thus, according to the government, this instruction was not improper because it merely identified "peripheral concepts" relevant to the jury's evaluation of Ducoudray's conduct and, insofar as it served this evidentiary function, it was perfectly permissible.  See id.

     As the government notes, precedent supports the conclusion that proof of a violation of a professional rule may play an evidentiary function in assessing the mens rea of a lawyer charged with criminal conduct in other contexts.  See, e.g., United States v. Kelly, 888 F.2d 732, 744 (11th Cir. 1989); Machi, 811 F.2d at 1000-02; United States v. DeLucca, 630 F.2d 294, 301 (5th Cir. 1980); see also, e.g., United States v. Klauber, 611 F.2d 512, 520 (4th Cir. 1979).  And while it is true, as Ducoudray argues, that none of these cases concern Rule 4.2, we do not see why that fact shows that proof of a violation of Rule 4.2 could not serve a similar evidentiary function concerning Ducoudray's mens rea here.

The fact that Ducoudray was visiting Castillo in violation of a professional ethical rule, such as Rule 4.2, could well be relevant to an assessment of whether he was acting with the required "corrupt" intent, rather than with the innocent intent that Ducoudray contended that he had. And Ducoudray identifies no authority that supports a contrary conclusion. Thus, Ducoudray supplies no basis on which we could rule that the District Court abused its discretion, insofar as the supplemental instruction served only the function of identifying the proscription that Rule 4.2 sets forth.

Moreover, Ducoudray never explains how the wording of the instruction misled the jury into concluding that proof of a violation to Rule 4.2 could, in and of itself, "stand in for the elements of the offenses," rather than that such proof could simply be relevant to the determination of whether Ducoudray had acted with the requisite corrupt intent.[17] Consequently, we do not see a basis for concluding that the inclusion of this supplemental instruction was an abuse of discretion. After all, the instruction was given only as a supplemental instruction after the jury had been separately instructed about the elements of each offense that it was required to find in order to convict Ducoudray. And the

---

[17] Ducoudray, in passing, asserts that the wording of the Rule 4.2 instruction "implied that [Ducoudray] had violated [Rule 4.2]," but never explains how exactly the text of the instruction implies that is so.

instruction, which clearly appeared as a stand-alone instruction in the written instructions, did not, by its terms, reference any of the elements of the offenses or say anything about how Rule 4.2 related to them.

For these reasons, we see no merit in Ducoudray's various challenges to the supplemental instruction concerning Rule 4.2. And thus we see no basis for concluding that áthis instruction requires that the convictions -- with respect to either offense -- be vacated.

**IV.**

Ducoudray's final argument is that his convictions must be reversed on the distinct ground that, even if no single error at trial warrants reversal, the cumulative effect of the errors does. But, although "[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect," United States v. Sepulveda, 15 F.3d 1161, 1195-96 (1st Cir. 1993), the cumulative error doctrine offers no help to Ducoudray.

Our review of the individual alleged errors reveals that there were either no errors or that the objections to the alleged errors were waived, with the sole exception being the admission of the Frankel email to the AUSA. But, as to that email evidence, we found that any error on the part of the District Court in admitting

- 31 -

that evidence was harmless.  As such, we find Ducoudray's cumulative error argument to be meritless.

## V.

The judgment is **affirmed**.