# United States Court of Appeals
## For the First Circuit

No. 18-1396

UNITED STATES,

Appellee,

v.

WILLIAM GAUDET,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, U.S. District Judge]

Before

Howard, Chief Judge,
Thompson and Barron, Circuit Judges.

Peter J. Cyr, with whom Law Offices of Peter J. Cyr was on brief, for appellant.

Renee M. Bunker, Assistant United States Attorney, Appellate Chief, with whom Halsey B. Frank, United States Attorney, was on brief, for appellee.

August 1, 2019

**BARRON**, **Circuit Judge**.    In  2017,  William  Gaudet ("Gaudet")  was  convicted,  after  trial,  in  the  United  States District Court for the District of Maine for federal sex offenses. He was sentenced to life imprisonment.  Gaudet now challenges his conviction and sentence on appeal.  We affirm.

**I.**

Gaudet  was  indicted  on  December  14,  2016,  on  one  count of Transportation of a Minor with the Intent to Engage in Criminal Sexual  Activity,  18  U.S.C.  §  2423(a),  and  one  count  of  Travel  with the  Intent  to  Engage  in  Illicit  Sexual  Conduct,  18  U.S.C. § 2423(b), in relation to allegations made by his daughter, T.G. Specifically,  she  testified  at  trial  that  he  sexually  abused  her during  a  2010  trip  to  Maine  that  he  took  with  her  and  other  family members  and  during  a  2010  trip  that  he  took  with  her  and  other family members to the Great Wolf Lodge in Pennsylvania.

At  his  trial  --  which  took  place  between  November  13, 2017,  and  November  16,  2017  --  the  government  relied,  in  part,  on recorded  testimony  given  by  Gaudet's  other  daughter,  Jenny,  from a  separate  trial,[1]  which  was  admitted  in  evidence  over  Gaudet's motion  to  exclude.   In  that  recorded  testimony,  Jenny  stated  that Gaudet  had,  on  two  separate  occasions  during  her  childhood,  abused her  in  a  manner  similar  to  the  abusive  conduct  described  by  T.G.

---

[1] Jenny passed away prior to the instant case and was therefore unable to testify in person.

The government also introduced evidence of Gaudet's conviction for sexually abusing Jenny that resulted from that separate trial.

At the close of the government's case, Gaudet moved for judgment of acquittal under Federal Rule of Criminal Procedure 29. The District Court denied that motion. Gaudet renewed his motion after the close of all evidence. The District Court again denied his motion. The jury found Gaudet guilty of both counts against him.

On May 1, 2018, the District Court sentenced Gaudet to life imprisonment on Count One and 360 months of imprisonment on Count Two. In doing so, the District Court applied the United States Sentencing Guidelines enhancement for obstruction of justice, see U.S.S.G. § 3C1.1, which increased Gaudet's base offense level ("BOL") under the guidelines by two levels. According to the District Court, the enhancement for obstruction of justice was warranted because Gaudet had "deliberately [given] false testimony . . . involv[ing] a material matter [i.e. whether he had sexually abused T.G.] and the testimony was not a result of any mistake or faulty memory and was thus willful." Gaudet timely objected to the District Court's application of the sentence enhancement, and the District Court overruled that objection. Gaudet then filed this timely appeal.

## II.

Gaudet first contends that the District Court erred in denying his Rule 29 motion because the evidence was not sufficient to support his two convictions. We review the denial of a Rule 29 motion for judgment of acquittal de novo. United States v. Gómez-Encarnación, 885 F.3d 52, 55 (1st Cir. 2018). "[W]e must affirm unless the evidence, viewed in the light most favorable to the government, could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt." Id. (citing United States v. Acevedo, 882 F.3d 251, 258 (1st Cir. 2018)).

The government's case depended in substantial part on the credibility of the testimony of T.G., who testified at trial that Gaudet sexually abused her while she resided with him in Stoneham, Massachusetts between 2008 and 2010, that he sexually abused her during the 2010 family trip to Maine, and that he sexually abused her during the 2010 trip to the Great Wolf Lodge in Pennsylvania. Gaudet points, however, to what he contends are features of her account that so undermine her credibility as to make it unreasonable for a jury to have credited it.

Gaudet emphasizes in particular that T.G. did not disclose that she had been sexually abused by Gaudet until four years after the alleged abuse occurred; that she did not disclose the abuse to her mother until after her sister, Jenny, told her mother that she suspected that Gaudet had abused T.G. as a child;

- 4 -

and that she denied that the abuse occurred when questioned by her teacher. Additionally, Gaudet argues that T.G.'s account of her abuse at trial varied from the account that she provided during the first of her two recorded interviews with a social worker in 2014. In particular, Gaudet highlights the fact that, in that first interview, T.G. stated that Gaudet had never penetrated her during any of the alleged abusive conduct, while she stated during her second interview, as she then also testified at trial, that Gaudet had both penetrated her and forced her to perform oral sex on him while they were in Maine.

In reviewing a challenge to the sufficiency of evidence, however, "[i]t is not our role to assess the credibility of trial witnesses or to resolve conflicts in the evidence[;] instead we must resolve all such issues in favor of the verdict." United States v. Hernandez, 218 F.3d 58, 66 n.5 (1st Cir. 2000). And, when T.G.'s testimony is viewed in that verdict-friendly light, as well as in the context of the evidence as a whole, the aspects of the record that Gaudet highlights do not require the conclusion that her statements "could not have persuaded any trier of fact of the defendant's guilt beyond a reasonable doubt." Gómez-Encarnación, 885 F.3d at 55 (quoting Acevedo, 882 F.3d at 258).

T.G.'s basic story remained unchanged from her first recorded interview, to her second, to her testimony at trial. In each instance, she recounted that her father sexually abused her

while she lived with him in Massachusetts, that he sexually abused her on their family trip to Maine, and that he sexually abused her again on their subsequent trip to the Great Wolf Lodge.

Moreover, the government provided expert testimony from Dr. Ann Burgess -- an expert in the behavior of domestic and sexual assault victims -- in which she testified that delayed disclosures are "[v]ery common" in abuse victims and stem from the way the brain processes, stores, and recalls traumatic experiences. Thus, the government introduced evidence that a reasonable juror could credit as offering a ready explanation for what Gaudet characterizes as the inconsistencies in T.G.'s accounts over time concerning his abuse.

Gaudet also argues that, in light of the "inconsistencies" in T. G.'s accounts that we have just considered, her testimony fails to provide a supportable basis for a rational juror's finding of guilt because of the testimony of his son, Matthew Danner. He points out that, at trial, Danner testified that he was sleeping near T.G. during both the Maine and Great Wolf Lodge vacations and that he was not aware of any of the abusive conduct that allegedly occurred. Gaudet contends that, if T.G.'s allegations were true, then Danner would have been awoken by the noise and would have been aware of what occurred.

But, Danner testified that he was a "heavy sleeper" and may have had difficulty waking even if there were nearby

- 6 -

disturbances.  Thus, Danner's testimony hardly provides a basis for concluding that no reasonable jury could have credited T.G.'s testimony concerning the abuse that she endured.

Wholly apart from Gaudet's challenge to the credibility of T.G.'s testimony, he also contends that the evidence was insufficient for a different reason.  He notes, rightly, that both 18 U.S.C. § 2423(a) and 18 U.S.C. § 2423(b) require that the government prove that the defendant traveled "with intent to engage in" the alleged sexual conduct.  18 U.S.C. §§ 2423(a), 2423(b). He then argues that, even if T.G.'s testimony sufficed to permit a reasonable juror to find that he had sexually abused her during the Maine and Great Wolf Lodge trips, the government failed "to present sufficient evidence relating to [his] intent . . . while traveling/transporting in interstate commerce."  He bases that contention largely on the fact that he testified at trial that his sole intent in engaging in such travel was to take his children whale watching in Maine and to the Great Wolf Lodge in Pennsylvania.

The intent element of these offenses, however, requires proof only that "criminal sexual activity [was] one of the several motives or purposes . . . not a mere incident of the trip or trips, but instead was at least one of the defendant's motivations for taking the trip in the first place."  United States v. Tavares, 705 F.3d 4, 17 (1st Cir. 2013) (quoting United States v. Ellis,

935 F.2d 385, 390 (1st Cir. 1991)) (alteration in original) (emphases added). Notwithstanding Gaudet's self-serving testimony concerning what he contends was his innocuous intent in traveling to Maine and the Great Wolf Lodge, a jury could have reasonably found from this record that he undertook such travel with the <u>additional</u> purpose of engaging in the sexual abuse that T.G. alleged occurred.

First, the government presented evidence from T.G. that Gaudet had abused her repeatedly at their home in Stoneham, Massachusetts <u>before</u> the interstate travel underlying the two offenses ever occurred. <u>See</u> <u>Ellis</u>, 935 F.2d at 391 (noting that evidence of other instances of sexual abuse between the defendant and the victim "is relevant on the issue of the purpose or intent of the transportation"). Second, the government presented testimony from T.G. that Gaudet abused her during both the family trip to Maine and the trip to the Great Wolf Lodge. <u>Cf.</u> <u>United States</u> v. <u>Abrams</u>, 761 F. App'x 670, 677 (9th Cir. 2019) ("Where sexual misconduct occurs both before and after crossing state lines, [a] rational trier of fact could have found that one of the dominant purposes [of the interstate transportation was] immoral, sexual purposes." (alterations in original) (citation omitted)); <u>United States</u> v. <u>Al-Zubaidy</u>, 283 F.3d 804, 809 (6th Cir. 2002) (opining that evidence of "what actually happened" is relevant to the questions of whether a defendant traveled interstate with the

intent to harm (quoting Washington v. Davis, 426 U.S. 229, 253 (1976) (Stevens, J., concurring))). Finally, the government presented evidence of Jenny's testimony from Gaudet's prior trial, during which she accused him of earlier abusing her in precisely the same manner as T.G. alleged he had abused her on the trips. See United States v. Raymond, 697 F.3d 32, 38-39 (1st Cir. 2012) (holding that one type of evidence probative of intent is evidence that the defendant committed an earlier crime that "bore a strong resemblance to the charged conduct"). In the face of this evidence, a jury was not obliged to take Gaudet at his word about the innocence of his intent.

## III.

Gaudet also contends that, even if the evidence was sufficient to support the convictions, they still may not stand, due to evidentiary errors that the District Court committed. In particular, he challenges the District Court's decision to admit, over his motion to exclude, Jenny's testimony from the earlier trial and to admit into evidence his conviction from that trial.

"This Court reviews a district court's evidentiary rulings for abuse of discretion . . . ." United States v. Sweeney, 887 F.3d 529, 537 (1st Cir. 2018). Under that standard, we will reverse "only if the Court is 'left with a definite and firm conviction that the court made a clear error of judgment.'" Id.

(quoting <u>United States</u> v. <u>Joubert</u>, 778 F.3d 247, 253 (1st Cir. 2015)).

We start with the District Court's decision to admit Jenny's testimony. Gaudet does not dispute the District Court's determination that Jenny's testimony was admissible -- insofar as its admission would not violate Federal Rule of Evidence 403 -- pursuant to Federal Rules of Evidence 413 and 414.[2] Rather, he contends only that the admission of that testimony <u>did</u> violate Rule 403 because it was unduly prejudicial.

We have consistently held, however, that there must be more than mere prejudice for a court to exclude evidence under Rule 403. Instead, under a Rule 403 inquiry, a court must find that the challenged evidence was "<u>unfairly</u> prejudicial" and that such unfair prejudice "substantially outweighed" the evidence's probative value. <u>Sweeney</u>, 887 F.3d at 538 (emphasis added); <u>see</u>

---

[2] At oral argument, Gaudet did raise for the first time a contention that his indictments under § 2423(a) and § 2423(b) did not constitute "accus[ations]" of sexual assault within the meaning of Rule 413. We have not previously addressed whether charges under § 2423(a) or § 2423(b) constitute accusations of sexual assault within the meaning of Rule 413. There is, however, precedent to support the conclusion that such charges do constitute such accusations, though this precedent does not directly address the relevant text of the Rule. <u>See, e.g.</u>, <u>United States</u> v. <u>Batton</u>, 602 F.3d 1191, 1195-96 (10th Cir. 2010). But Gaudet conceded that this argument was not raised, at least in any clear way, in his briefing to us. Accordingly, we treat that argument as waived. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

also id. at 539 (concluding that even though the challenged evidence was "surely prejudicial," it was not "unfairly prejudicial such that it violated [Rule 403]"); United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989) ("By design, all evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided."). Our Court has defined unfair prejudice as "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Sweeney, 887 F.3d at 538 (quoting United States v. Jones, 748 F.3d 64, 70 (1st Cir. 2014)).

The District Court's balancing of the probative value of evidence as compared to its tendency to unfairly prejudice the defendant is entitled to great weight. Id. at 537-38. Thus, "[o]nly rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988).

Applying this past guidance here, we conclude that the District Court did not abuse its discretion in ruling that the prejudicial impact of Jenny's testimony -- which was considerable -- did not "substantially outweigh" the testimony's probative value. Jenny's testimony was, after all, highly probative of Gaudet's guilt in multiple ways.

- 11 -

First, Jenny's testimony was directly probative of Gaudet's intent in traveling to Maine and the Great Wolf Lodge. As stated previously, both § 2423(a) and § 2423(b) require that the government prove beyond a reasonable doubt that the defendant traveled "with intent to engage in" the alleged sexual conduct. 18 U.S.C. §§ 2423(a), 2423(b). We have previously held that one type of evidence probative of such intent is evidence that the defendant committed an earlier crime that "bore a strong resemblance to the charged conduct." Raymond, 697 F.3d at 38-39. Here, Gaudet's daughter, T.G., accused him, in part, of molesting her as a young child by bringing her into his bedroom while she slept, undressing her, and rubbing her inappropriately. In the evidence that Gaudet now challenges, Jenny, Gaudet's other daughter, accused him of molesting her in precisely the same manner: he transported her across state lines to his home in New Hampshire, she fell asleep on the couch, he carried her into his room, he undressed her, and he proceeded to rub her inappropriately until she awoke.

Second, Jenny's testimony was probative because it helped to establish the credibility of T.G.'s testimony. Indeed, much of Gaudet's strategy at trial involved discrediting T.G.'s credibility by highlighting inconsistencies in her testimony. The evidence of Jenny's testimony, therefore, was probative because the near identical account of abuse that she offered helped to

corroborate T.G.'s allegations by illustrating that his other daughter had leveled nearly identical allegations against Gaudet previously. See Joubert, 778 F.3d at 254 ("The uncharged child molestation testimony was probative of [the victim's] veracity because it corroborated aspects of [the victim's] testimony, particularly the nature of the abuse and [the defendant's] modus operandi in approaching his victims.").

It is true that the abuse that Jenny described in her recorded testimony occurred several years before the abuse that T.G. described at trial. See Raymond, 697 F.3d at 39 n.5 (describing the importance of the "temporal proximity" between two unrelated assaults as it pertained to the defendant's intent to commit the more recent assault). But Gaudet does not argue that the challenged evidence was improperly admitted because the abuse that Jenny described occurred too long ago. And given the nearly identical nature of the allegations included in Jenny's testimony and those provided by T.G. at trial, the time gap between the two incidents does not in and of itself render it an abuse of discretion for the District Court to have concluded that the testimony was admissible under Rule 403's unfairly prejudicial standard.

In pressing his case under Rule 403, Gaudet relies chiefly on Martinez v. Cui, 608 F.3d 54 (1st Cir. 2010). But, there we merely upheld a District Court's exercise of discretion

to preclude the admission of testimony concerning allegations of a defendant's past sexual abuse on the ground that they were too different from the allegations of sexual abuse for which the defendant was being tried. Id. at 60-62. Thus, Martinez provides no support for concluding that the District Court was required to exclude Jenny's testimony of Gaudet's sexual abuse, when that testimony alleged abuse nearly identical to the kind for which he was charged.

We turn, then, to Gaudet's challenge to the District Court's decision to admit the evidence of his conviction. But, Gaudet does not explain why, if Jenny's testimony was admissible under Rule 403, the admission of the conviction would not have been. We thus reject this challenge as well. See United States v. Majeroni, 784 F.3d 72, 75-76 (1st Cir. 2015) (considering similar factors to those relied on here to determine that the District Court did not err in admitting evidence of a prior conviction of child molestation); Sweeney, 887 F.3d at 538-39 (admitting evidence of a prior assault and battery conviction in a child pornography case).

## IV.

We come, then, to Gaudet's challenges to his sentence. We review sentences imposed under the guidelines for abuse of discretion. United States v. Velez-Soto, 804 F.3d 75, 77 (1st Cir. 2015). Under this standard, we review factual findings for

clear error and the District Court's construction of the guidelines de novo.  Id.

First, Gaudet challenges the District Court's application of a two-level sentence enhancement for obstruction of justice under § 3C1.1 of the Guidelines.  U.S.S.G. § 3C1.1 (recommending a two-level sentence enhancement in cases where "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice").  Gaudet argues to us -- as he did below -- that such an application was improper, as there was no indication that he "willfully" provided false testimony.  For that reason, Gaudet contends, the District Court's perjury determination amounted to little more than a conclusion that the defendant "disagree[d] with the Government's case" and the jury's ultimate verdict.

Gaudet is right that, to apply the § 3C1.1 enhancement, the District Court was required to make "independent findings necessary to establish" willfulness.  United States v. Dunnigan, 507 U.S. 87, 95 (1993).  But, the District Court expressly stated that Gaudet had perjured himself at trial because, in the District Court's view, "the defendant deliberately gave false testimony denying the abuse . . . and the testimony was not a result of any mistake or faulty memory and was thus willful."  Given that the District Court was well-positioned to assess the defendant's credibility independent of the jury's verdict or the government's

evidentiary showing, see United States v. Shinderman, 515 F.3d 5, 19 (1st Cir. 2008) ("Where, as here, the sentencing judge has presided over the trial, we must allow him reasonable latitude for credibility assessments [regarding perjury]."), and that the ample evidence presented at trial flatly contradicted Gaudet's assertions that he never sexually abused T.G., we find no error in the District Court's application of the obstruction of justice enhancement, see id. (noting that the "irreconcilable differences" between the defendant's testimony and that of a separate witness supported the District Court's perjury determination).

Gaudet's challenges to the reasonableness of his sentence are also unpersuasive. Gaudet first argues that the District Court did not "impose a sentence sufficient, but not greater than necessary," as required by 18 U.S.C § 3553(a). Specifically, he contends that this is so because the District Court did not appropriately consider his advanced age and the fact that he was already facing imprisonment as a result of his separate state sentence. But, the District Court expressly stressed that its aim was to impose a sentence that was "sufficient but not greater than necessary to effectuate the goals of 18 U.S.C § 3553(a)," and, in doing so, explicitly addressed Gaudet's age and existing state sentence as factors that it considered in imposing the chosen sentence. Accordingly, while Gaudet may have wished that the District Court weighed these factors differently, our job

in reviewing a District Court's sentence is not to "substitute [the defendant's] judgment for that of the sentencing court," United States v. Clogston, 662 F.3d 588, 593 (1st Cir. 2011), because "the weighing of different sentencing factors is largely within the court's informed discretion." United States v. Colon-Rodriguez, 696 F.3d 102, 108 (1st Cir. 2012) (internal quotation omitted).

Gaudet's other challenge also fails. He contends that the District Court erred by imposing its sentence without considering "the totality of the circumstances," specifically, his past abuse at the hands of his father and the fact that he spent much of his adult life caring for his grandmother and the rest of his family. But, while the District Court did not expressly address the two mitigating factors cited by the defendant, we have no reason to believe that the District Court overlooked them. Each of these aspects of Gaudet's background was expounded upon, in detail, by defense counsel during the sentencing hearing, and the District Court expressly stated that it had considered "the evidence presented at the [sentencing] hearing" and "everything [it] heard from counsel." As we have stressed previously, the District Court need not "walk, line by line, through" each of the mitigating factors that a defendant presents during sentencing. United States v. Cortés-Medina, 819 F.3d 566, 571 (1st Cir. 2016). Accordingly, "we discern no abuse of discretion in the sentencing

- 17 -

court's failure to acknowledge explicitly that it had mulled the defendant's arguments."  Id.

## V.

We, therefore, affirm Gaudet's conviction and sentence.