# United States Court of Appeals
## For the First Circuit

No. 17-1957

UNITED STATES,

Appellee,

v.

VICTOR LARA, JR.,

Defendant, Appellant.

No. 17-1964

UNITED STATES,

Appellee,

v.

KOURTNEY WILLIAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Jon D. Levy, U.S. District Judge]

Before

Thompson, Stahl, and Barron,
Circuit Judges.

Luke S. Rioux for Victor Lara, Jr.
Jessica LaClair for Kourtney Williams.

Benjamin M. Block, Assistant United States Attorney, with whom Halsey B. Frank, United States Attorney, was on brief, for appellee.

August 12, 2020

**BARRON**, **Circuit Judge**.  In these consolidated appeals, Victor Lara and Kourtney Williams challenge various federal convictions -- and the resulting sentence -- that each received in connection with a 2014 robbery in Maine.  We affirm their convictions, except for the one that each received for violating 18 U.S.C. § 924(c), which makes it a crime to use a firearm "during and in relation to" a "crime of violence," id. § 924(c)(1)(A). The reversal of those convictions requires that we also vacate Lara's and Williams's sentences.

## I.

Lara was arrested and detained on state charges by local law enforcement authorities in Maine on August 6, 2014, and so, too, was Williams days later on August 9.  The arrests were made in connection with the robbery that year in Minot, Maine, of the residence of Ross Tardif, an alleged dealer of oxycodone and other controlled substances.

A federal complaint in connection with the robbery of Tardif's residence was filed in the District of Maine against Lara on March 18, 2015, at which point the state charges against him in connection with the robbery were dismissed and he was taken into federal custody.  Then, on April 7, 2015, a federal grand jury in the District of Maine indicted both him and Williams, as well as a third person, Ishmael Douglas, on federal criminal charges arising out the robbery.

The federal indictment charged Douglas, Lara, and Williams each with one count of conspiracy to possess with intent to distribute controlled substances -- specifically, oxycodone -- under 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); one count of conspiracy to commit Hobbs Act robbery under 18 U.S.C. § 1951(a); and one count of use of a firearm during and in relation to a "crime of violence" under 18 U.S.C. § 924(c)(1)(A)(ii). The federal indictment also charged Williams and Douglas each with one count of possession of a firearm by a felon under 18 U.S.C. §§ 922(g)(1) and 924(e).

Over the course of the next roughly eighteen months, Lara, Williams, and Douglas filed various pre-trial motions in the District Court. Then, in August of 2016, Douglas entered a conditional guilty plea to the counts for conspiracy to commit Hobbs Act robbery and for violating § 924(c), and the remaining charges against him were dismissed. Lara and Williams, however, proceeded to trial, and the jury in their case returned its verdict in September of 2016. The jury found them not guilty of conspiracy to possess with intent to distribute a controlled substance in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C), but guilty on the other counts. The District Court entered judgments of convictions against both Lara and Williams and proceeded to sentencing.

The District Court sentenced Lara to 100 months of imprisonment for his conviction for conspiracy to commit Hobbs Act robbery and eighty-four months of imprisonment for his conviction for violating § 924(c), with each of these sentences to run consecutively. Lara thus received a total prison sentence of 184 months. The District Court sentenced Williams to a 100-month prison sentence for his conviction for conspiracy to commit Hobbs Act robbery, which was to run concurrently with his fifty-month prison sentence for his conviction for being a felon in possession of a firearm and consecutively to his eighty-four-month prison sentence for his conviction for violating § 924(c). Thus, like Lara, Williams also received a 184-month prison sentence.

Both defendants filed timely appeals, which were consolidated for our review.

## II.

We start with the challenges that Lara and Williams each bring to their convictions for use of a firearm "during and in relation" to a "crime of violence." 18 U.S.C. § 924(c)(1)(A). The alleged "crime of violence" was conspiracy to commit Hobbs Act robbery. At the time that Lara and Williams were each convicted of this offense, the applicable definition of a "crime of violence" contained both a "force clause" and a "residual clause." See id. § 924(c)(3); see also United States v. Cruz-Rivera, 904 F.3d 63, 65 (1st Cir. 2018). The latter clause denominated as a "crime of

- 5 -

violence" a felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).[1]

After the parties filed their initial briefs to us in these then-pending consolidated appeals, however, the United States Supreme Court decided United States v. Davis, 139 S. Ct. 2319 (2019). In that case, the Court struck down the "residual clause" as unconstitutionally vague. See id. at 2336. We requested supplemental briefing to address Davis's impact, if any, on Williams's and Lara's § 924(c) convictions. In their supplemental briefs, Lara and Williams argue that in consequence of Davis, conspiracy to commit Hobbs Act robbery does not qualify as a "crime of violence" under § 924(c), because what remains of the "crime of violence" definition does not encompass that offense. The government agrees. We thus reverse the conviction pursuant to § 924(c) that Lara and Williams each received.

**III.**

We next consider a set of challenges based on various instructional errors that Williams brings to his stand-alone conviction for conspiracy to commit Hobbs Act robbery. Lara did

---

[1] The "force clause" defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).

not make these challenges in his opening brief to us, but he purports to join in them through his reply brief.

We assume Lara has not waived these challenges by raising them only in his reply brief. See United States v. Mkhsian, 5 F.3d 1306, 1310 n.2 (9th Cir. 1993). But see United States v. Leoner-Aguirre, 939 F.3d 310, 319 n.11 (1st Cir. 2019) (finding arguments raised for the first time in a reply brief waived). For ease of exposition, though, we describe these challenges as if they are Williams's alone. We do so in part because Lara purported to join in them merely in one sentence in his reply brief. He thus gives no reason as to why his challenges do not rise and fall with Williams's arguments, even if some of them were waived below by representations that Williams's counsel made to the District Court while representing his client alone.

**A.**

We start with the contention that the District Court incorrectly instructed the jury that it only needed to find that Williams intended to obtain "drugs or drug trafficking proceeds" to find him guilty of conspiracy to commit Hobbs Act robbery. Williams points out that the indictment charged him with having "knowingly and intentionally conspired . . . to obstruct, delay and affect commerce and the movement of articles in commerce, namely illegal drugs and drug trafficking proceeds, by robbery" but then added that, "[s]pecifically, the defendants agreed

- 7 -

together and with others to steal Percocet (oxycodone) pills and any proceeds from the trafficking of such illegal drugs." Williams contends that the instruction constructively amended the indictment by describing the object of the charged conspiracy too generally. See United States v. Pierre, 484 F.3d 75, 81-82 (1st Cir. 2007) (discussing constructive amendments).

The problem for Williams is that, in a colloquy that preceded this instruction, the government proposed that the District Court use the word "property" to describe the conspiracy's object, and Williams's counsel proposed instead that the District Court use the phrase "drugs or drug proceeds." Thus, Williams targets language in the instruction that is not materially different from the language that his counsel requested. Accordingly, the challenge has been waived. See United States v. Acevedo, 882 F.3d 251, 264 (1st Cir. 2018).

**B.**

Williams next challenges the response that the District Court gave to a question that the jury asked during deliberations about this same count. The jury's question related to a theory that Williams had put forward at trial concerning a mismatch between what the evidence at trial had showed to be the object of the conspiracy and the object of the conspiracy charged in the indictment. Specifically, Williams had argued at trial that the evidence showed that the object of the conspiracy was inheritance

- 8 -

money belonging to Tardif, while the indictment described its object as "Percocet (oxycodone) pills and any proceeds from the trafficking of such illegal drugs."

The jury's question was: "[C]an we convict on just conspiracy, without convicting specifically under [H]obbs [A]ct [r]obbery for oxycodone pills and proceeds (question of inheritance as motive)?" The District Court responded: "[Y]ou cannot convict either defendant under [this count] unless you find that the defendant was part of [a] conspiracy that intended to obtain drugs or drug trafficking proceeds . . . by robbery."

Williams does not dispute that the District Court's response correctly instructed the jury that it could not find him guilty on this count if the object of the conspiracy did not concern "drugs" at all. But, he contends, the instruction still wrongly instructed the jury, because it instructed the jury that it could find him guilty of this count without finding that the conspiracy's object concerned "Percocet (oxycodone)" specifically. By describing the conspiracy's object as generally as the answer to the jury's question did, Williams argues, the District Court constructively amended the indictment. See Pierre, 484 F.3d at 81-82.

We agree with the government that here, too, waiver stands in the way of Williams's challenge. See Acevedo, 882 F.3d at 264. The record shows that the District Court discussed how to

- 9 -

respond to the jury's question with counsel for both parties before answering it and that Williams's counsel stated during that colloquy that he "[a]greed" with the response that the District Court gave.[2]

Williams separately challenges the District Court's response to this question on the ground that it wrongly suggested that the jury needed to find only that the conspiracy, rather than Williams, intended to obtain drugs or drug trafficking proceeds. See United States v. Gonzalez, 570 F.3d 16, 24 (1st Cir. 2009) ("Under our law, 'the requisite intent' needed for a conspiracy conviction is that 'the defendant intended to join in the conspiracy and intended the substantive offense to be committed.'" (quoting United States v. Henderson, 320 F.3d 92, 110 (1st Cir. 2003))). But, because Williams's counsel agreed to the District Court's response, this challenge, too, is waived. See Acevedo, 882 F.3d at 264.

Moreover, if this challenge is not waived, it is at least forfeited. Thus, our review is at most only for plain error. See United States v. Mojica-Baez, 229 F.3d 292, 311 (1st Cir. 2000).

---

[2] Williams contends that, after his counsel agreed to this instruction, the attorney later told the District Court "I sort of withdraw what I said previously." Based on this statement, Williams argues that his challenge to the District Court's response to the jury's question was not waived. But, the transcript reveals that the attorney expressed this hesitance when discussing a separate question that the jury had asked during its deliberations.

To show an error of that kind, Williams must show, among other things, that it was "clear or obvious." Gonzalez, 570 F.3d at 21. But, prior to answering the jury's question, the District Court instructed the jury that it needed to find that "the defendant knowingly and willfully conspired to obtain drugs or drug trafficking proceeds" in order to find Williams guilty of this conspiracy offense. Thus, it is not "clear or obvious" that "[t]he charge [to the jury], taken as a whole" failed adequately to "convey[] the idea that [Williams] must have personally and intentionally joined the agreement." Id. at 24.

## c.

Williams's final challenge in this set of claimed instructional errors rests on the contention that the District Court engaged in impermissible factfinding in responding to a separate question that the jury asked during its deliberations. The question concerned the testimony of a key witness for the government, Heidi Hutchinson, who both participated in the initial conversations about the robbery of Tardif's residence and served as the driver in carrying it out.

The jury asked the following question about the testimony: "Does Heidi [Hutchinson] mention or imply in her transcript that [Tardif] had Perc 30's [oxycodone]?" The District Court replied: "Yes."

Williams points out that Hutchinson did not testify that she had personal knowledge that Tardif had oxycodone. Instead, she testified that a person named Myles Hartford, who had participated in the initial conversations about robbing Tardif's residence but who did not testify at trial, had said in her presence that Tardif had oxycodone. Williams contends that the District Court usurped the role of the jury by stating that Hutchinson herself had "mention[ed]" or "impl[ied]" that Tardif had oxycodone, when, in fact, the record shows that she testified only that Hartford had made a representation in her presence that Tardif had that drug.

Williams further contends that the District Court's answer was highly prejudicial. He points out that Hutchinson had participated in the robbery but that Hartford had backed out of doing so. He contends that testimony from someone who participated in the robbery that Tardif had oxycodone provided more support for the jury finding that the object of the conspiracy concerned that drug than did that same testimony from someone who ultimately backed out of the robbery.

The parties dispute whether this challenge, too, was waived below. But, it was at least forfeited, as Williams concedes he failed to object below, and so our review is at most for plain error. See Mojica-Baez, 229 F.3d at 311. Williams has failed to

show, however, that the District Court's answer to the jury constituted an error of that kind.

The District Court could have provided the jury with a more precise description of Hutchinson's testimony. But, Hutchinson did testify that Hartford said that Tardif had oxycodone. We thus cannot say that the District Court's pithy answer so mischaracterized Hutchinson's testimony that it constituted, as the plain error standard requires in the absence of contemporaneous objection, a "clear or obvious" error. See United States v. Sabetta, 373 F.3d 75, 80-81 (1st Cir. 2004) (finding no clear or obvious error on plain error review even though the district court's response to a jury's question about testimony was not "ideal").

## IV.

We now turn to a challenge that Williams brings to an evidentiary ruling that the District Court made at trial that he contends requires that we vacate his conviction for conspiracy to commit Hobbs Act robbery. Here, too, Lara did not bring this challenge in his opening brief to us. He purports to join in it solely through his reply brief. We once again assume that Lara has not waived this challenge on appeal, though, again, we describe

it -- for ease of exposition -- as if it has been brought by Williams alone.[3]

In the evidentiary ruling at issue, the District Court permitted the introduction at trial of Hutchinson's testimony about statements that Hartford -- the person who Hutchinson had said told her that Tardif had oxycodone -- made during the planning phase of the conspiracy to commit the robbery. Williams argues that it was wrong for the District Court to have done so, because that testimony from Hutchinson was hearsay. We do not agree.

The District Court provisionally admitted Hutchinson's testimony, in accordance with United States v. Petrozziello, 548 F.2d 20, 23 (1st Cir. 1977), under the co-conspirator hearsay exception that Federal Rule of Evidence 801(d)(2)(E) sets forth. That exception to the hearsay bar "provides that a statement made by a defendant's coconspirator 'during the course of and in furtherance of the conspiracy' may be introduced as the nonhearsay admission of a party opponent." United States v. Ciresi, 697 F.3d 19, 25 (1st Cir. 2012) (quoting Fed. R. Evid. 801(d)(2)(E)). The District Court then later ruled -- after the close of evidence -- that Hutchinson's testimony about what Hartford had said in her presence was admissible under that same exception.

---

[3] While Lara does develop this challenge to an extent on his own in his reply brief, his arguments overlap with those raised by Williams. Thus, here as well we describe the arguments as if they are the contentions of Williams alone.

We review preserved challenges to the admission of statements under Rule 801(d)(2)(E) for either clear error or abuse of discretion.  United States v. Merritt, 945 F.3d 578, 586 (1st Cir. 2019).  We need not decide which standard applies in this case, as Williams's challenge fails under either standard.  See id.

The District Court summarized Hutchinson's testimony as relating to statements that Hartford made "on or around July 26th of 2014, both in-person at Hutchins[on's] apartment and then subsequently over the phone."  The District Court further explained that:

> The substance of the hearsay included the idea that Ross Tardif's house would be a good target for a robbery because Hartford knew Tardif to be a drug dealer who had money and drug proceeds in his house, and also that Hartford described the layout of the inside of Tardif's house, which is information which would be important to planning a robbery.

Hutchinson testified, for instance, that Hartford "came up with the idea that he knows somebody [named Ross Tardif] that he used to get drugs off of that has money and drug proceeds in his house," and that Hartford proposed robbing Tardif's house. Hutchinson also testified that Lara, Williams, and Hartford agreed that they "were gonna go into Ross's house and rob him," although there is no dispute that the record shows that Hartford ultimately backed out and did not participate in the robbery.

- 15 -

Williams does not make clear which precise portions of Hutchinson's testimony he is contending were inadmissible as hearsay. But, the testimony described above potentially undermined Williams's defense at trial that the government had failed to show that -- as the indictment alleged -- the conspiracy to rob Tardif's residence had as its object obtaining Percocet (oxycodone) pills and drug trafficking proceeds rather than money that Tardif had inherited.

In challenging the admission of the testimony, Williams rightly contends that, to admit out-of-court statements made by a defendant's co-conspirator that otherwise would be barred as hearsay, a district court "must determine by a preponderance of the evidence that the declarant and the defendant were members of the same conspiracy and that the statement was made in furtherance of the conspiracy." Merritt, 945 F.3d at 586 (quoting United States v. Paz-Alvarez, 799 F.3d 12, 29 (1st Cir. 2015)). He also rightly contends that the government could not rely solely on Hutchinson's testimony about Hartford's statements to determine that Hartford was a member of the same conspiracy as Williams, such that Hartford's statements could be admitted pursuant to the co-conspirator exception to the hearsay bar. See United States v. Piper, 298 F.3d 47, 52 (1st Cir. 2002) (explaining that "coconspirator statements are not deemed self-elucidating"). Williams then winds up this challenge by arguing that the District

Court erred because there was insufficient corroborating evidence that Hartford was a member of the same conspiracy as the one in which Williams was alleged to have been a participant.

To support this contention, Williams first asserts that the evidence shows that Hartford was not involved in the robbery conspiracy at all -- whatever its object -- because he did not participate in the robbery itself.  But, that contention is without merit, as a conspirator's "culpability may be constant though responsibilities are divided" and thus "the government does not need to show . . . that a given defendant took part in all aspects of the conspiracy."  United States v. Sepulveda, 15 F.3d 1161, 1173 (1st Cir. 1993).

Williams also suggests that even if Hartford initially participated in the conspiracy, he then withdrew from it well before the robbery occurred by ignoring the defendants' phone calls and not otherwise manifesting any involvement in it thereafter.  But, that contention is also mistaken.  Williams does not argue that Hartford ever "act[ed] affirmatively either to defeat or disavow the purposes of the conspiracy," Leoner-Aguirre, 939 F.3d at 318 (quoting Ciresi, 697 F.3d at 27); see also Piper, 298 F.3d at 53 (explaining that withdrawal typically "requires 'either . . . a full confession to authorities or a communication by the accused to his co-conspirators that he has abandoned the enterprise and its goals'" (alteration in original) (quoting United States v.

- 17 -

<u>Juodakis</u>, 834 F.2d 1099, 1102 (1st Cir. 1987))), and Hartford's "[m]ere cessation of activity in furtherance of the conspiracy does not constitute withdrawal," <u>Leoner-Aguirre</u>, 939 F.3d at 319 (alteration in original) (quoting <u>Ciresi</u>, 697 F.3d at 27).

That leaves only Williams's contention that, even if Hartford participated along with him in the conspiracy to rob Tardif's residence, the evidence did not show by a preponderance that they both conspired to commit that robbery to obtain Percocet (oxycodone) and drug trafficking proceeds, because of the evidence that indicated that at least one of them conspired at most to rob the residence to obtain Tardif's inheritance money.[4]  Thus, Williams contends the record does not show by a preponderance that he and Hartford belonged to the same conspiracy.

To support this contention, Williams highlights the fact that Hutchinson testified that she herself had no knowledge -- apart from what she testified Hartford said in her presence -- that Tardif sold oxycodone.  Williams also points out that Douglas, his co-defendant who pleaded guilty to conspiracy to

_____

[4] "[T]he rigors of Rule 801(d)(2)(E) may be satisfied by showing that both the declarant and the defendant belonged to some conspiracy other than the substantive conspiracy charged in the indictment."  <u>Piper</u>, 298 F.3d at 54-55 (citing <u>United States</u> v. <u>Lara</u>, 181 F.3d 183, 196 (1st Cir. 1999)).  But, here, the government did not argue that Hartford's statements were admissible based on the broader conspiracy to rob Tardif's house. So we assume, as Williams argues, that the government had to show that he and Hartford shared the goal to rob oxycodone and drug proceeds, specifically.

- 18 -

commit Hobbs Act robbery in connection with the robbery of Tardif's residence, testified that Williams's goal was to steal inheritance money. Finally, Williams notes that the record shows that no Percocet (oxycodone) pills were taken from Tardif's residence during the robbery.

But, under the deferential standard of review that we must apply -- whether abuse of discretion or clear error -- the record suffices to support the District Court's finding that the preponderance of the evidence shows that the object of the conspiracy of which Williams was a part concerned Percocet (oxycodone) and drug trafficking proceeds. Hutchinson testified, in statements that are not challenged on appeal, that during meetings to plan the robbery, Lara and Williams discussed that they intended to get "Perc 30s" -- oxycodone -- from Tardif's house and "to sell them to get money." Additionally, the government points out that a victim of the robbery testified that the robbers entered the home yelling "DEA, DEA" and asked repeatedly "where's the shit?"

Moreover, whether our review is for abuse of discretion or clear error, the evidence also sufficed to support the District Court's finding that a preponderance of the evidence showed that Hartford was a member of that same conspiracy. Tardif testified that he was a known Percocet (oxycodone) dealer, that he had been selling drugs for years prior to the robbery, and, critically,

- 19 -

that Hartford had previously tried to buy drugs from him.  That testimony in turn corroborated Hartford's statement to Williams and Lara, just before they agreed to rob Tardif, that he knew that Tardif sold drugs and that he had drug money in his house.  Moreover, Hutchinson testified, based on her own recollection, that Hartford "masterminded" the robbery and that he was one of the people who was in the room during the planning meetings.  Thus, considering the evidence as a whole, a reasonable factfinder supportably could determine that it was more likely than not that all the participants in the conspiracy were after Tardif's Percocet (oxycodone) rather than his inheritance money.

Accordingly, to the extent that the challenged testimony is hearsay, we find that the District Court did not abuse its discretion or clearly err in admitting Hutchinson's testimony about Hartford's statements under Rule 801(d)(2)(E).  We thus reject this ground for challenging Williams's conviction for conspiracy to commit Hobbs Act robbery.

## V.

Lara alone brings the next challenge that we address, which takes aim at all his convictions.  He contends that his right

under the Sixth Amendment to the United States Constitution to a speedy trial on his federal charges was violated.[5]

The Sixth Amendment guarantees that all criminal defendants "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI.  "If the government violates this . . . right, [then] the criminal charges must be dismissed."  United States v. Dowdell, 595 F.3d 50, 60 (1st Cir. 2010).

To assess whether a defendant's Sixth Amendment right has been violated, we consider four factors:  (1) "the length of delay"; (2) "the reason assigned by the government for the delay"; (3) "the defendant's responsibility to assert his right"; and (4) "prejudice to the defendant, particularly 'to limit the possibility that the defense will be impaired.'"  United States v. Handa, 892 F.3d 95, 101 (1st Cir. 2018) (quoting Barker v. Wingo, 407 U.S. 514, 532 (1972)).

Lara does not dispute that our precedent requires that we apply the abuse of discretion standard to review this claim. See id. (noting that the abuse of discretion standard is "in tension with the rules of other circuits, as well as this circuit's

---

[5] Lara also alleges a violation of his right to due process under the Fifth Amendment to the United State Constitution on the same basis, but, because he offers no distinct arguments to support his Fifth Amendment claim, we analyze both of his claims in parallel under the Sixth Amendment framework.  We note as well that Lara does not allege a violation of the Speedy Trial Act, see 18 U.S.C. §§ 3161-3174, to this Court, and that the District Court found that he had waived any claim under that statute.

standard of review when considering other similar issues" (quoting United States v. Irizarry-Colón, 848 F.3d 61, 68 (1st Cir. 2017))). We thus conduct our review under that relatively deferential standard.

## A.

The inquiry into the first factor -- delay -- entails what amounts to a "double enquiry," as delay is "both . . . a 'triggering mechanism for the rest of the [speedy trial] analysis, and a factor in that analysis.'" Id. (second alteration in original) (first quoting Doggett v. United States, 505 U.S. 647, 651 (1992), and then quoting United States v. Carpenter, 781 F.3d 599, 609 (1st Cir. 2015)). We thus first ask in assessing the delay factor whether "the time between accusation . . . and trial 'has crossed the threshold dividing ordinary from presumptively prejudicial delay.'" Id. (quoting Irizarry-Colón, 848 F.3d at 68). If the delay does, then we must further ask how long it lasted. See id.

Delays of around a year or longer are presumptively prejudicial. Id. In the event of such a delay, we balance all four of the factors to determine whether there has been a violation, as none carries "any talismanic power." Dowdell, 595 F.3d at 60.

The parties agree that the delay before Lara's trial on the federal charges was itself at least one year and thus

presumptively prejudicial. See Handa, 892 F.3d at 101. But, Lara contends the delay should be measured from the time of arrest on the state charges in August of 2014, because he contends that "federal investigators were involved," even at that early point. Thus, he contends that he experienced a delay of about twenty-five months before the commencement of his trial in September of 2016, and that the District Court, which measured the period of pre-trial delay from the time of his federal arrest in March of 2015, erred in finding that the delay was only seventeen months and twenty days.

In Dowdell, however, we held that "[t]he speed of a federal trial is measured from the federal accusation on which it is based." 595 F.3d at 62. Moreover, Dowdell explained that this general rule applies even when a "federal indictment was essentially a continuation of . . . state proceedings." Id.

Lara counters that Dowdell was based on dual sovereignty concerns rooted in the Double Jeopardy Clause and that we have subsequently cast "skepticism" on an attempt to "import Double Jeopardy principles into our Sixth Amendment speedy trial jurisprudence." Handa, 892 F.3d at 105. But, while Dowdell recognized that the dual sovereignty principles it was applying were "perhaps most recognizable from the double jeopardy context," it expressly held that the same principles "animate our

constitutional speedy trial jurisprudence, as well."  595 F.3d at 61.

Nor is our subsequent decision in Handa to the contrary. To the extent that we expressed "skepticism" about importing Double Jeopardy principles into the speedy trial analysis in that case, we did so only in rejecting the government's contention that a federal charge added in a superseding federal indictment "reset[] the speedy trial clock as to that charge so long as, under Double Jeopardy principles, the additional charge is not for the 'same offense' as one of the original charges."  892 F.3d at 105 (footnote omitted); see also id. at 100-01.  Thus, Handa accords with Dowdell.

Lara also argues that Dowdell does not control the way that we must measure the delay in this case because it was based on a misreading of United States v. MacDonald, 456 U.S. 1 (1982), which he contends "stands for the proposition that the right [to a speedy trial] attaches at the time of accusation -- not necessarily [the] federal accusation."  He thus appears to argue that, under a proper reading of MacDonald, his speedy trial right attached at the time of the state accusation, because he was in continuous custody from the time at which the state charges were filed in August of 2014 until his trial in September of 2016.  Not so.  We are bound by Dowdell under the law-of-the-circuit doctrine, see United States v. Barbosa, 896 F.3d 60, 74 (1st Cir. 2018),

and, in any event, Dowdell itself recognized that MacDonald expressly noted that "an arrest or indictment by one sovereign would not cause the speedy trial guarantees to become engaged as to possible subsequent indictments by another sovereign," 595 F.3d at 61 (quoting MacDonald, 456 U.S. at 10 n.11).[6]

Lara's last argument for concluding that the delay was much greater than roughly eighteen months rests on cases that have concluded that a superseding federal indictment does not reset the speedy trial clock. See, e.g., Handa, 892 F.3d at 102-04. But, these cases are entirely consistent with the conclusion, based on Dowdell, that his state charges are irrelevant to when the speedy clock starts here.

Thus, we agree with the District Court that Lara experienced a delay of about eighteen months. We have characterized such a delay as "not at the extreme end of the spectrum" but one that might nevertheless weigh somewhat in the defendant's favor in the overall calculus. United States v. Souza, 749 F.3d 74, 82 (1st Cir. 2014). The government does not disagree.

---

[6] We have noted that a limited exception to this rule may exist where a "state prosecution is 'merely a tool of the federal authorities'" and thus "one sovereign was a pawn of the other." Dowdell, 595 F.3d at 63 (first quoting Bartkus v. Illinois, 359 U.S. 121, 123-24 (1959), then quoting United States v. Guzman, 85 F.3d 823, 827 (1st Cir. 1996)). But, Lara does not argue that this exception applies in his case.

We proceed on that understanding in moving on to the next factor under the speedy trial test.

**B.**

This second factor concerns the explanation for the delay, and it is the "focal inquiry." Id. (quoting United States v. Munoz-Franco, 487 F.3d 25, 60 (1st Cir. 2007)). The District Court found that the primary causes of the delay were the pre-trial motions filed by Lara's co-defendants and Lara's unsuccessful motion to sever.[7] Lara does not identify any evidence that the delay was a product of bad faith or inefficiency on the government's part. Thus, because the delay is "largely due to the needs of codefendants, rather than any slothfulness on the government's part," this second factor points against finding a speedy trial violation. United States v. Vega Molina, 407 F.3d 511, 533 (1st Cir. 2005); see also United States v. Casas, 425 F.3d 23, 34 (1st Cir. 2005) ("[T]he joint prosecution of defendants involved in the same drug trafficking conspiracy is justified as a means of serving the efficient administration of justice. Accordingly, we find that the reasons for the delay are sound and weigh against a finding of Sixth Amendment violation.").

---

[7] As the District Court found, Lara's two co-defendants filed numerous motions to extend the time for filing pre-trial motions, a motion to reopen a detention hearing, a motion to suppress, motions to sever, a partial motion to dismiss, motions in limine, a motion to continue the trial date, and a change in plea.

## C.

The third factor concerns whether the defendant asserted the speedy trial right. The government concedes that Lara repeatedly did so in the District Court. Thus, this factor points in Lara's favor.

## D.

The fourth and final factor concerns prejudice. The Court has recognized three types of prejudice: "'oppressive pretrial incarceration,' 'anxiety and concern of the accused,' and 'the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett, 505 U.S. at 654 (alteration in original) (quoting Barker, 407 U.S. at 532). Lara asserts that his case was affected by all three, but he focuses his arguments to us on the third type, which concerns the extent to which the delay impaired his defense.

Lara first notes that Hartford, who Hutchinson testified had participated in the planning stages of the robbery before backing out, died before trial. But, Hartford died in December 2014, prior to Lara's federal indictment in 2015. Thus, the delay itself could not have prejudiced Lara in that regard.

Lara also argues that the government's case was unusually dependent on witness testimony. But, his contention that the delay impacted witness's memories is almost entirely speculative, and "[t]he passage of time alone . . . is not

conclusive evidence of prejudice." United States v. Colombo, 852 F.2d 19, 26 (1st Cir. 1988).  To the extent that he makes any concrete argument on this front, he contends that the witness testimony was inconsistent.  These assertions are not backed up, however, with any specific instances of inconsistencies.

Lara does argue that one important government witness -- Douglas, the co-defendant who pleaded guilty before trial -- agreed to testify only on the eve of trial.  But, the fact that a witness did testify as a result of the delay is not, at least on its own, the sort of prejudice that the speedy trial right is designed to protect against.  See United States v. Trueber, 238 F.3d 79, 91 (1st Cir. 2001) ("[The defendant] does not point to a single authority to support the novel proposition that the potential strength the government's case may acquire over time amounts to prejudice against the defendant."); United States v. Abad, 514 F.3d 271, 275 (2d Cir. 2008) (noting that the procurement of cooperating witnesses during a delay "does not, on its own, amount to prejudice" in the speedy trial analysis).

Finally, Lara argues that he faced prejudice of the first two types -- "oppressive pretrial incarceration" and "anxiety and concern of the accused." Doggett, 505 U.S. at 654.  But, he points to no case where we have found that a defendant was prejudiced when there was a delay of this duration, no evidence of bad faith by the government, and no evidence that the defense was impaired.

Thus, this factor points against finding a speedy trial right violation.

## E.

Putting the full speedy trial analysis together, this case is not unlike those in which we have found no speedy trial right violation. See Vega Molina, 407 F.3d at 533 (no violation where an eighteen-month delay was caused by co-defendants and did not cause prejudice). We thus reject this challenge.

## VI.

The final challenge to a conviction that we must address concerns Williams's under 18 U.S.C. § 922(g)(1) for being a felon in possession of a firearm. Section 924(a)(2) provides that "[w]hoever knowingly violates" certain subsections of § 922, including the subsection at issue in this case -- § 922(g) -- "shall be fined . . . , imprisoned not more than 10 years, or both." Id. § 924(a)(2) (emphasis added). In turn, § 922(g) provides that it is "unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to . . . possess . . . any firearm." Id. § 922(g)(1).

Following Williams's conviction for this offense and the parties' filing of their initial briefs, the United States Supreme Court decided Rehaif v. United States, 139 S. Ct. 2191 (2019). There, the Court held that the word "knowingly" in § 924(a)(2),

when applied to the elements of the crime listed in § 922(g)(1), required the government to show not only "that the defendant knew he possessed a firearm" but "also that he knew he had the relevant status when he possessed it." 139 S. Ct. at 2194, 2196. We asked Williams and the government to address the impact of Rehaif on Williams's felon-in-possession conviction in their supplemental briefs.

Based on Rehaif, Williams contends, on a number of distinct grounds, that his felon-in-possession conviction cannot stand. First, he contends that insufficient evidence supported the conviction, because there was insufficient evidence to satisfy the knowledge-of-status element. Second, he argues that the indictment was deficient because it neither referenced § 924(a)(2) nor otherwise indicated that the government needed to show Williams's knowledge of his status as a felon at the time of his firearms possession. Finally, he contends that the jury instructions did not mention the knowledge-of-status element of the offense.

Courts throughout the country have been grappling with similar challenges in the wake of Rehaif, as their precedent, like ours, did not require proof of knowledge of status prior to Rehaif. See, e.g., United States v. Maez, 960 F.3d 949, 953 (7th Cir. 2020). These challenges raise a number of questions about, in particular, the application of the plain error standard of review,

which provides that a clear or obvious error should be corrected if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." Rosales-Mireles v. United States, 138 S. Ct. 1897, 1905 (2018) (quoting Molina-Martinez v. United States, 136 S. Ct. 1338, 1343 (2016)); see, e.g., United States v. Johnson, 963 F.3d 847, 851-54 (9th Cir. 2020) (considering what evidence an appellate court should review when addressing a Rehaif-based challenge on plain error review); Maez, 960 F.3d at 959-66 (collecting cases and holding that, when reviewing Rehaif-based challenges to indictments and jury instructions under prong four of plain error review, an appellate court may consider evidence that was not before, respectively, the grand jury and jury). We consider each of the three Rehaif-based challenges that Williams brings in turn, though we find that none supplies a basis for overturning the conviction.

**A.**

Williams first argues that there was insufficient evidence to convict him of violating § 922(g)(1) and § 924(a)(2) because, based on the evidence introduced at trial, no rational juror could have found the knowledge-of-status element of the offense that Rehaif now makes clear a jury must find. When considering sufficiency challenges that are properly preserved, we examine the record evidence "in the light most favorable to the prosecution" and determine whether, considered in that light, the

- 31 -

"body of proof, as a whole, has sufficient bite to ground a reasoned conclusion that the government proved each of the elements of the charged crime beyond a reasonable doubt." United States v. Lara, 181 F.3d 183, 200 (1st Cir. 1999). But, Williams did not raise this challenge below, and so he must show that there was a "clear and gross injustice," United States v. Morel, 885 F.3d 17, 22 (1st Cir. 2018) (quoting United States v. Marston, 694 F.3d 131, 134 (1st Cir. 2012)), which means that he must show at a minimum that the evidence was plainly insufficient to support the conviction, United States v. Valenzuela, 849 F.3d 477, 484 (1st Cir. 2017) (explaining that the "clear and gross injustice" standard is a "particularly exacting variant of plain error review" (quoting United States v. Foley, 783 F.3d 7, 12 (1st Cir. 2015))). He has not done so.

The evidence that the jury considered included, as the government notes, a stipulation that "Williams had been previously convicted of at least one crime punishable by a term of imprisonment exceeding one year." It also included, the government adds, both Hutchinson's testimony that Williams asked her to purchase ammunition for him about a week before the robbery because he claimed that he did not have identification and her testimony that he asked her to store two firearms for him after the robbery. Thus, we agree with the government that the record was not so clearly insufficient that affirming the verdict would work a clear

and gross injustice, given the inference that the jury could have drawn about Williams's knowledge of his status as a felon at the time of his possession of the firearms from the fact that it knew that he was a felon at that time and the testimony that it had heard about his requests that Hutchinson purchase the ammunition and store the firearms. See Maez, 960 F.3d at 967 (finding sufficient evidence under de novo review to uphold a § 922(g) conviction after Rehaif based on the defendant's stipulation and "evasive behavior" when law enforcement conducted a search and found firearms).

**B.**

Williams next trains his focus on the indictment, which was handed up by the grand jury prior to Rehaif. It stated in relevant part:

> On about August 2, 2014, in the District of Maine, the Defendant, Kourtney Williams[,] having been convicted of the following crimes punishable by a term of imprisonment exceeding one year, specifically, [three counts of Larceny from a Person and four counts of Assault with a Dangerous Weapon in violation of Massachusetts law, and three counts of Assault and one count of Robbery with a Dangerous Weapon in violation of Maine law] knowingly possessed, in and affecting commerce, two firearms, specifically, [two 9mm semi-automatic pistols]. Thus, the Defendant violated Title 18, United States Code, Sections 922(g)(1) and 924(e).

Williams contends that the indictment did not charge him with the felon-in-possession offense, because it failed to allege, per

Rehaif, that he had knowledge of his status as a felon at the time of his firearms possession.

As an initial challenge, Williams contends that the District Court had no jurisdiction to enter a judgment of conviction for this felon-in-possession offense due to this defect in the indictment. He further contends that, because a challenge to a jurisdictional defect in an indictment is not subject to waiver or forfeiture, the government is wrong to argue that this challenge is subject to plain error review. See Mojica-Baez, 229 F.3d at 311.

Williams's jurisdictional challenge rests entirely on a passage in United States v. Rosa-Ortiz, 348 F.3d 33 (1st Cir. 2003), in which we stated that "[a] federal court . . . lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law." Id. at 36. But, we have subsequently explained that this passage's reference to "jurisdiction" was "an awkward locution" that "used the word 'jurisdiction' to refer to what the court considered a non-waivable defect . . . not to the district court's power to adjudicate the case." United States v. George, 676 F.3d 249, 259-60 (1st Cir. 2012); see also id. at 259 (explaining that courts have sometimes used the term jurisdiction colloquially). As the United States Supreme Court has explained, "defects in an indictment do not deprive a court of its power to adjudicate a case." United States

v. Cotton, 535 U.S. 625, 630 (2002). For that reason, in United States v. Burghardt, 939 F.3d 397 (1st Cir. 2019), we found the district court had jurisdiction to accept the defendant's plea of guilty to being a felon in possession of a firearm even though the indictment, like Williams's, failed to allege that the defendant had known he was a felon when he possessed the firearm. Id. at 400, 402. Thus, the District Court had jurisdiction here.

Williams separately contends that, even still, the indictment was deficient and that our review is not for plain error, as the government argues it is. He bases this contention on his assertion that the indictment's omission of the reference to the "knowingly" element of the offense constituted a structural error, because he contends that it violated both his right under the Fifth Amendment to the United States Constitution to be indicted by a grand jury and his right under the Sixth Amendment to the United States Constitution to be informed of the accusation against him. See United States v. Rivera-Rodriguez, 617 F.3d 581, 604 (1st Cir. 2010) (explaining that the Supreme Court "has classified an error as structural in only a very limited class of cases," such as when there was a "complete denial of counsel, presence of a biased trial judge, racial discrimination in the selection of a grand jury, denial of self-representation at trial, denial of a public trial, and offering a defective reasonable doubt

- 35 -

instruction" (quoting <u>United States</u> v. <u>Fazal-Ur-Raheman-Fazal</u>, 355 F.3d 40, 48 (1st Cir. 2004))).

The plain error standard of review applies, however, even to challenges to structural errors if they were not raised below. <u>See</u> <u>Johnson</u> v. <u>United States</u>, 520 U.S. 461, 466 (1997). Thus, we must consider whether Williams can show that there was a plain error here due to the <u>Rehaif</u>-based defect in the indictment that he highlights.

We agree with Williams that the first two prongs of the plain error standard -- "(1) an error, (2) that is clear or obvious," <u>United States</u> v. <u>Correa-Osorio</u>, 784 F.3d 11, 18 (1st Cir. 2015) -- are met. The indictment clearly failed to allege an element of the offense. <u>See</u> <u>Hamling</u> v. <u>United States</u>, 418 U.S. 87, 117 (1974). The indictment references § 924(e) but not § 924(a)(2), which contains the language that sets forth the knowledge-of-status element. And while the indictment uses the word "knowingly" in describing the offense, it uses that word to modify only "possessed . . . two firearms." The indictment thus charged Williams only with knowledge of possession of the firearms, not knowledge of his status as a felon at the time of his possession of the firearms. <u>See</u> <u>Rehaif</u>, 139 S. Ct. at 2196. Accordingly, we are not persuaded by the government's argument that there was no clear or obvious defect here. <u>See</u> <u>Henderson</u> v. <u>United States</u>, 568 U.S. 266, 268-69 (2013) (explaining that an error can be "plain"

under Federal Rule of Criminal Procedure 52(b) if it is plain at "the time of appellate review").

The third prong of the plain error standard requires that the defendant show that a clear and obvious error "affect[ed] his substantial rights." Correa-Osorio, 784 F.3d at 18. To make that showing, a defendant must ordinarily "'show a reasonable probability that, but for the error,' the outcome of the proceeding would have been different." Molina-Martinez, 136 S. Ct. at 1343 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 76, 82 (2004)).

In Mojica-Baez, we reserved the possibility that an indictment that omits an element might constitute structural error for failing to provide the defendant fair notice of the offense that he was charged with violating. 229 F.3d at 310-11. Here, Williams's indictment, unlike the indictment in Mojica-Baez, did not include a reference to the statutory provision that contained the element that it omitted. See id. at 310. Nevertheless, we need not decide whether Williams is right that, in consequence, the error is structural, such that Williams need not show the omission affected his substantial rights. For, we still must assess whether the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings," Cotton, 535 U.S. at 632-33; see also Mojica-Baez, 229 F.3d at 310, and we conclude that it does not.

The indictment presented to the grand jury identified the following crimes of which Williams had been convicted that were punishable by a term exceeding one year: one count of Larceny from a Person under Massachusetts law, of which he was convicted on November 26, 2007; four counts of Assault with a Dangerous Weapon under Massachusetts law, of which he was convicted on September 22, 2008; two counts of Larceny from a Person under Massachusetts law, of which he was convicted on September 22, 2008; and three counts of Assault and one count of Robbery with a Dangerous Weapon under Maine law, of which he was convicted on September 20, 2013. In light of at least the four relatively recent and serious Maine convictions,[8] as well as the judgment and

---

[8] Williams argued after briefing was complete that his Massachusetts convictions were not for felony offenses and that at least four of the convictions -- the three counts of Assault and one count of Robbery with a Dangerous Weapon under Maine law -- do not show that he knew of his status as a felon at the time of his firearms possession because he tendered a plea of nolo contendere to each of these offenses. It is not clear that his arguments on this point are directed at his indictment challenge, let alone at the fourth prong of plain error review with respect to that challenge. But, in addition to the fact that they are waived because he made them so late, see Leoner-Aguirre, 939 F.3d at 319 (finding arguments raised after the completion of briefing waived), they are also undeveloped, as he points to no case law to support the conclusion that a conviction based on a nolo plea precludes a conviction for a felony offense from constituting a conviction for a felony under Maine law or for the conclusion that, because he entered a nolo plea to those crimes, he would not have known that the felonies of which he was convicted in consequence of the nolo pleas were felonies, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

commitment order for them -- in which Williams signed off that he had received a copy of the order and understood the sentence (eighteen months for each conviction, to run concurrently) that had been imposed -- "the grand jury" "[s]urely" "would have also found" the omitted element.[9]  Cotton, 535 U.S. at 633; see also Johnson, 963 F.3d at 851-54; Maez, 960 F.3d at 966.  His conclusory assertions that a defendant's state of mind is hard to prove and that the nature of his prior convictions was ambiguous do not show otherwise.  Nor does he develop any argument as to how the lack of notice stemming from the omitted knowledge-of-status element mattered, given this evidence of his prior criminal history.

To be sure, this is not a case where the defendant slept on his rights, but, like Mojica-Baez, it also not one "where the prosecutor failed to indict in accordance with the current state of the law."  Mojica-Baez, 229 F.3d at 310.  Rather, it is a case where the "indictment . . . was entirely proper at the time" that it was put before the grand jury, as "[n]either the prosecution nor defense counsel . . . anticipated that the Supreme Court would rule as it did in [Rehaif]."  Id.  Here, as there, we conclude

_____

[9] Williams notes that this evidence was not introduced at trial.  But, he fails to develop an argument for why the fact that the petit jury was unable to consider this evidence bears on the question of whether it is appropriate for us to take this evidence into account in deciding whether the omission of the knowledge-of-status element from the indictment issued by the grand jury constitutes plain error.  See Zannino, 895 F.2d at 17.

that the defect in the indictment is not one that must be corrected on plain error review, id. at 307-12; see also Cotton, 535 U.S. at 633, because the evidence that the element that was omitted has been satisfied is nevertheless "'overwhelming' and 'essentially uncontroverted'" and thus "there [is] 'no basis for concluding that the error seriously affected the fairness, integrity or public reputation of judicial proceedings,'" Cotton, 535 U.S. at 633 (quoting Johnson, 520 U.S. at 470).

## c.

Williams's final Rehaif-based challenge to his felon-in-possession conviction is to the District Court's instructions on the elements of this offense. Those instructions, which were given prior to Rehaif, did not include a reference to the knowledge-of-status element of the offense. Williams did not object to the jury instructions, however, and he makes no argument on appeal for why the plain error standard would not apply to our review of this claim. Thus, we again conduct our review only for plain error, see United States v. Pennue, 770 F.3d 985, 989 (1st Cir. 2014), and we again find none.

The government concedes that the failure to instruct the jury on the knowledge element was clearly wrong under Rehaif. The only questions on appeal, therefore, concern prongs three and four -- whether Williams has shown both that the error "affected [his] substantial rights" and that it "seriously impaired the

fairness[,] integrity, or public reputation of judicial proceedings." United States v. Severino-Pacheco, 911 F.3d 14, 20 (1st Cir. 2018) (quoting United States v. Perretta, 804 F.3d 53, 57 (1st Cir. 2015)).

At trial, the government did not introduce any evidence of Williams's prior convictions beyond the stipulation, which the government entered into on the correct understanding that, under our then-prevailing precedent, it did not need to prove the defendant's knowledge of his status of being a felon at the time of his possession of the firearms. See Burghardt, 939 F.3d at 402 n.3; United States v. Miller, 954 F.3d 551, 559-60 (2d Cir. 2020). But, as noted, the government had available to it evidence of Williams's four recent and serious convictions from Maine, the judgment and commitment order for those convictions, and Williams's acknowledgement in that order that he had received it and understood his sentence.

That evidence, it is true, is not in the trial record. We note, however, that we regularly take judicial notice of such state court records given their presumed reliability. See, e.g., United States v. Mercado, 412 F.3d 243, 247 (1st Cir. 2005); see also Fed. R. Evid. 201(b)(2).

Moreover, the Supreme Court has never suggested that we are categorically barred from taking into account evidence not introduced at trial in considering whether an instructional error

- 41 -

satisfies the fourth prong of plain error review. Rather, it has indicated that the hurdles such review imposes are intended in large part to "reduce wasteful reversals." United States v. Dominguez Benitez, 542 U.S. 74, 75 (2004); see also United States v. Morosco, 822 F.3d 1, 21 (1st Cir. 2016) (holding that, for a defendant to show plain error, there must at least be a "threat of a miscarriage of justice" (quoting United States v. Torres-Rosario, 658 F.3d 110, 116 (1st Cir. 2011))). It has held, furthermore, that such a wasteful reversal takes place if, after a trial judge failed, without objection, to submit an element of the offense to the jury, an appellate court vacated the conviction for that offense in spite of "overwhelming" and "essentially uncontroverted" evidence that the element was satisfied. Johnson, 520 U.S. at 470. And while Johnson involved overwhelming and uncontroverted evidence that all appears to have been introduced at trial, see id. at 464-65, 470 & n.2; Petition for Certiorari at 4a-5a, 9a, Johnson v. United States, 520 U.S. 461 (1997) (No. 96-203), the Supreme Court at no point suggested that its holding was so limited. Rather, the Court's reluctance to vacate the conviction of a defendant with "no plausible argument" that the facts underlying the contested element of her offense of conviction did not occur would seem to apply equally to Williams's appeal. Id. at 470.

For that same reason, while it is true that, as Williams notes, due process generally demands that we not "revise the basis on which a defendant is convicted simply because the same result would likely obtain on retrial," Dunn v. United States, 442 U.S. 100, 107 (1979); see also United States v. Didonna, 866 F.3d 40, 50 (1st Cir. 2017); Cola v. Reardon, 787 F.2d 681, 688, 701 (1st Cir. 1986), that contention is not helpful to him. Dunn, Didonna, and Cola did not involve an application of plain error review, and thus did not have occasion to consider, in addition to whether a constitutional violation occurred, whether the fairness, integrity, or public reputation of judicial proceedings were impacted by that violation. See Cotton, 535 U.S. at 634 ("[A] constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right . . . ." (alteration in original) (quoting Yakus v. United States, 321 U.S. 414, 444 (1944))). But, that is the precise inquiry that we must engage in here.

We find it significant, moreover, that the government's failure to introduce additional evidence of Williams's knowledge of his status as a felon was not a problem of its own making. Under our precedent at the time of trial, the government did not have to introduce evidence that Williams knew of the nature of his prior conviction to prove his guilt of the felon-in-possession offense. See Burghardt, 939 F.3d at 402 n.3. The law at the time,

- 43 -

then, only allowed the government to introduce evidence of those convictions insofar as it helped to show that Williams was actually a felon, not to show that he was aware he was one. So, in providing only the limited evidence it did concerning his convictions at trial, the government was acting in accord with the requirements of proof at the time. See Old Chief v. United States, 519 U.S. 172, 191-92 (1997) (setting forth limits on evidence that may be used to prove a defendant's status as a felon at the time of firearms possession when the defendant stipulates to being a felon at that time).

Thus, at least here, it would be the overturning, and not the affirming, of the conviction on the basis of the newly raised challenge under Rehaif that would "seriously affect the fairness, integrity, or public reputation of judicial proceedings." Johnson, 963 F.3d at 852-54 (discussing Johnson, 520 U.S. at 470, and Cotton, 535 U.S. at 633-34, in concluding that "the fourth prong of plain-error review is designed, in part, to weed out cases in which correction of an unpreserved error would ultimately have no effect on the judgment"); see also Miller, 954 F.3d at 559-60 (relying on, at prong four of plain error review, "reliable evidence in the record on appeal that was not a part of the trial record," including evidence of a prior conviction, to reject a defendant's post-Rehaif challenge to his § 922(g) conviction based on erroneous jury instructions); United States v.

Hollingshed, 940 F.3d 410, 415-16 (8th Cir. 2019) (considering a defendant's convictions that were not before the jury, among other evidence, in declining to reverse a defendant's § 922(g) conviction post-Rehaif based on an erroneous jury instruction).[10]

## VII.

There remains, then, only the challenges that Williams brings to the sentence that the District Court imposed. Williams argues that the District Court erred in sentencing him to a mandatory minimum prison sentence of eighty-four months for his § 924(c) conviction. Lara purported to join this sentencing challenge in his reply brief, and we again assume that Lara has not waived the challenge, but describe the challenge as Williams's alone. The government agrees that, because Williams's conviction under § 924(c) must be reversed in light of Davis, his challenge to the sentence imposed for this conviction is moot. We thus do not address the merits of this challenge.

Additionally, Williams argues that the District Court erred in: (1) determining that he was a career offender under U.S.S.G. § 4B1.1; and (2) calculating his offense level; and (3) determining his criminal history category. The government and Williams agree that, because Williams's sentence as a whole must

---

[10] For the reasons already mentioned, see supra note 8, Williams's belated contention that his convictions do not show his knowledge of status fails.

be vacated due to our reversal of his § 924(c) conviction, this Court need not address Williams's remaining sentencing challenges.[11]

## VIII.

We thus affirm all of Lara's and Williams's convictions, save for their convictions for violating § 924(c), which are reversed, and remand this case to the District Court for resentencing.

---

[11] The government has agreed that, if this Court remands this case for resentencing without addressing these additional sentencing issues that Williams raised, Williams can raise these arguments again before the District Court. Additionally, at oral argument, the government agreed that, if Williams files a notice of appeal following resentencing and raises the sentencing issues that he had raised to this Court in briefing, the government will not argue that this Court is barred from hearing the claims based on the law-of-the-case doctrine.