# United States Court of Appeals
## For the First Circuit

No. 18-2106

UNITED STATES OF AMERICA,

Appellee,

v.

ADAMS JOEL FORTY-FEBRES, a/k/a Adams Forty-Febres,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Aida M. Delgado-Colón, U.S. District Judge]

Before

Lynch, Thompson, and Kayatta,
Circuit Judges.

Ovidio E. Zayas-Pérez for appellant.
Gregory B. Conner, Assistant United States Attorney, with
whom W. Stephen Muldrow, United States Attorney, and Mariana E.
Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate
Division, were on brief, for appellee.

December 8, 2020

LYNCH, **Circuit Judge**. In 2018, a jury convicted Adams Joel Forty-Febres of one count of stealing a motor vehicle in violation of 18 U.S.C. § 2119 and one count of brandishing a firearm in violation of 18 U.S.C. § 924(c)(1)(A)(ii) for a carjacking committed on November 5, 2015, in Canóvanas, Puerto Rico. Forty-Febres argues that the evidence at trial was insufficient to support his conviction, that the district court abused its discretion in rulings related to his co-defendant's testimony, and that the jury's verdict was inconsistent. We affirm.

## I. Facts

There were two carjackings on November 5, 2015. The first occurred at around 9:30 PM. Pamela Mena-Varella, the victim, owned a mint green 2005 Toyota Corolla. She worked at a store in an outlet mall. At trial, she testified that, after leaving work, she walked to her car in the mall parking lot. She got in, turned it on, and began backing out of her parking spot. She said she then noticed two men walking toward her. One of the men was pointing a gun at her. She said that before she could drive away, the man with the gun came up to the window of her car and said, "you either get out of the car or I'll shoot your head off." She testified that the man with the gun had dark lips, pointed ears, bangs, and a long rat tail. He was wearing a red and white Chicago Bulls shirt, short black pants, and black tennis shoes. She said

the other man had a lot of hair and was wearing a gray, long-sleeved shirt with black pants. As instructed, Mena-Varella got out of her car. The two men got in and drove away.

The second carjacking occurred approximately thirty minutes later in the same neighborhood. Delmarie Muriel-Colón testified that, on November 5, 2015, she was picking up her son. He was with his paternal grandparents and she drove to their house to pick him up. Their house was about a five-minute drive from the store where Mena-Varella worked. Muriel-Colón said that, after arriving, she stopped in front of the gate to the house and waited for it to open. She noticed a mint green Toyota Corolla coming down the street. She knew the car was a Toyota Corolla because she was also driving a Toyota Corolla. The street was a dead end, and she said that as she was waiting, she saw the same Corolla pass her again going in the opposite direction. She picked up her son and started driving home. She said she made two turns before noticing that a car was following her very closely. She kept driving until a mint green Toyota Corolla crossed in front of her and blocked her way. She testified that a man got out of the passenger side of the Corolla, pointed a gun at her, and ordered her out of the car. She said that the area was well lit and that she could see the man with the gun. She described him as having dark skin and dark, unruly hair and said he was wearing a t-shirt and basketball shorts. She said he had "a penetrating look" she

"can't forget." Muriel-Colón's son, who had been seated in the back of the car, jumped into her lap. They got out of the car. The man with the gun got in the car and drove away, following the mint green Corolla.

Six days later, on November 11, 2015, the police found Mena-Varella's car. They contacted Mena-Varella and asked her to identify her carjacker in a lineup. At the lineup, she said Forty-Febres was the man who had pointed the gun at her and ordered her out of the car. She also identified Forty-Febres at trial. Additionally, Mena-Varella identified Forty-Febres's accomplice at trial as David Alexander Vázquez-De León.

The police also found Muriel-Colón's car, which had been destroyed. Like Mena-Varella, Muriel-Colón identified Forty-Febres in a lineup as the man who had pointed the gun at her and ordered her out of her car. She also identified him as her carjacker at trial.

## II. Procedural History

Forty-Febres and Vázquez-De León were indicted on four counts related to the two carjackings: (1) violating 18 U.S.C. § 2119 by carjacking Muriel-Colón; (2) brandishing a firearm to steal Muriel-Colón's car in violation of 18 U.S.C. § 924(c)(1)(A)(ii); (3) violating 18 U.S.C. § 2119 by carjacking Mena-Varella; and (4) brandishing a firearm to steal Mena-Varella's car in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The trial began on May 15, 2018. Forty-Febres and Vázquez-De León were set to be tried together, but after the first day of trial, Vázquez-De León pleaded guilty to the two carjacking counts. The government dismissed the two counts of brandishing a firearm against him. During his change-of-plea hearing, Vázquez-De León claimed not to know Forty-Febres. Forty-Febres wanted Vázquez-De León to testify in his defense. Vázquez-De León later invoked his Fifth Amendment right against self-incrimination and did not testify at Forty-Febres's trial. The judge instructed the jury to draw no inferences from the fact that Vázquez-De León was no longer at the defense table.

Both Mena-Varella and Muriel-Colón testified for the prosecution as described earlier. The government called three police officers to testify about their investigations and introduced evidence that both Mena-Varella's and Muriel-Colón's Toyota Corollas were manufactured in Japan and moved through interstate commerce.

Forty-Febres called one police officer to testify that fingerprints found on Mena-Varella's Corolla did not match Forty-Febres's fingerprints. He called two additional witnesses -- his ex-fiancée and her mother -- to testify that he was with them on the night of November 5, 2015.

The jury returned its verdict on May 22, 2018. It found Forty-Febres guilty of carjacking Muriel-Colón and brandishing a

firearm while doing so.  It acquitted him of the charges related to the carjacking of Mena-Varella.

Forty-Febres appeals from the verdict against him for the charges related to the Muriel-Colón carjacking.

### III. Legal Analysis

Forty-Febres makes three arguments on appeal.  First, he says that the evidence at trial was insufficient to support his conviction.  Next, he says that the district court abused its discretion by refusing to delay the trial until Vázquez-De León was sentenced and by allowing Vázquez-De León to assert his Fifth Amendment right.  Third, he argues that the fact that the jury acquitted him of one carjacking but convicted him of the other makes the jury's verdict inconsistent.

A.   The Evidence Was Sufficient to Support Forty-Febres's Conviction

In reviewing sufficiency-of-the-evidence challenges, "we consider whether any rational factfinder could have found that the evidence presented at trial, together with all reasonable inferences, viewed in the light most favorable to the government, established each element of the particular offense beyond a reasonable doubt."  United States v. Ridolfi, 768 F.3d 57, 61 (1st Cir. 2014) (quoting United States v. Rodríguez, 735 F.3d 1, 7 (1st Cir. 2013)).

Forty-Febres was convicted of the carjacking of Muriel-Colón under 18 U.S.C. § 2119. The crime has four elements: (1) taking or attempting to take "from the person or presence of another"; (2) "by force and violence or by intimidation"; (3) with "intent to cause death or serious bodily harm"; (4) "a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce." 18 U.S.C. § 2119; see also United States v. Velázquez-Aponte, 940 F.3d 785, 797 (1st Cir. 2019). Forty-Febres argues that there was insufficient evidence to conclude beyond a reasonable doubt that these elements were satisfied. He says that no DNA or fingerprint evidence at trial placed him at the crime scene, that he did not meet Muriel-Colón's initial description of the man who carjacked her, and that the testimony of Forty-Febres's ex-fiancée and her mother showed that he was with them on the night of November 5, 2015. We hold that a reasonable factfinder could have found that the evidence at trial, viewed in the light most favorable to the government, established each of these elements beyond a reasonable doubt.

As to the first element, a reasonable factfinder could have found Muriel-Colón's testimony at trial sufficient to establish that Forty-Febres was the person who took her car from her. Muriel-Colón testified at trial that it was Forty-Febres who carjacked her. She identified him at the trial and said that he was the man who got out of the mint green Toyota Corolla and

- 7 -

pointed a gun at her. She said she could see him clearly. She described his appearance at trial and said that she "can't forget his look." She also identified Forty-Febres in a lineup after her car was stolen.

There was other evidence corroborating Muriel-Colón's trial testimony that Forty-Febres was her carjacker. Mena-Varella[1] said that her mint green Toyota Corolla was stolen at around 9:30 PM, thirty minutes before Muriel-Colón was carjacked by someone driving a mint green Corolla. Mena-Varella testified that Forty-Febres, whom she had identified at a lineup and at trial, was one of the men who had stolen her car. The two carjackings occurred about a five-minute drive away from each other. It is reasonable to infer that Mena-Varella's car was later used in the carjacking of Muriel-Colón.

Muriel-Colón's testimony also supports a finding that the second and third elements of the crime were met. She said that Forty-Febres came up to the door of her car, pointed a gun at her, and ordered her out of her vehicle. From this testimony, a reasonable factfinder could infer that Forty-Febres, by aiming a deadly weapon directly at Muriel-Colón while stealing her car,

---

[1] The jury did not convict Forty-Febres on the counts related to Mena-Varella's carjacking. But sufficiency-of-the-evidence review for the counts on which a defendant was convicted is "independent of the jury's determination that evidence on another count was insufficient." United States v. Powell, 469 U.S. 57, 67 (1984).

took her vehicle through force or intimidation and with the intent to cause death or serious bodily harm.  This same evidence also supports Forty-Febres's conviction for brandishing a firearm under 18 U.S.C. § 924(c)(1)(A)(ii).

Finally, the prosecution certified that Muriel-Colón's Toyota Corolla was manufactured in Japan.  Her car had thus "been transported, shipped, or received in interstate or foreign commerce," 18 U.S.C. § 2119, satisfying the final element of the crime.

Forty-Febres's argument that the evidence at trial was insufficient because the government did not present DNA or fingerprint evidence placing him at the crime scene goes nowhere. "[T]he fact that the government did not present certain kinds of evidence does not [necessarily] mean that there was insufficient evidence for conviction."  United States v. Rivera-Rodríguez, 617 F.3d 581, 599 (1st Cir. 2010) (second alteration in original) (quoting United States v. Liranzo, 385 F.3d 66, 70 (1st Cir. 2004)).  Viewed in the light most favorable to the verdict, a reasonable factfinder could have found that the victims' testimony at trial described earlier was sufficient to convict Forty-Febres beyond a reasonable doubt.

Forty-Febres's other two arguments are similarly unavailing.  He says that he did not meet Muriel-Colón's original

description of the man who pointed a gun at her[2] and that the time of day prevented Muriel-Colón from getting a good look at her carjacker. He also argues that his ex-fiancée and her mother provided him with an alibi. Whether the jury believed Muriel-Colón's testimony identifying Forty-Febres or the testimony that Forty-Febres was with his ex-fiancée and her mother turns on the witnesses' credibility. In reviewing a challenge to the sufficiency of the evidence, "[i]t is not our role to assess the credibility of trial witnesses or to resolve conflicts in the evidence" and "we must resolve all such issues in favor of the verdict." United States v. Gaudet, 933 F.3d 11, 15 (1st Cir. 2019) (quoting United States v. Hernández, 218 F.3d 58, 66 n.5 (1st Cir. 2000)). The jury, having heard all of the evidence at trial, credited Muriel-Colón's identification and did not believe testimony about Forty-Febres's alibi. It was entitled to do so.

B. The District Court Did Not Abuse Its Discretion

Forty-Febres next argues that the district court abused its discretion in two ways: by refusing to compel Forty-Febres's co-defendant to testify and by denying Forty-Febres's motion to delay the trial until after his co-defendant was sentenced. We find no abuse of discretion.

---

[2] In his brief to us, Forty-Febres does not explain how or why Muriel-Colón's initial description was inaccurate.

- 10 -

"[A] witness may invoke the Fifth Amendment if testifying might incriminate him on direct or cross-examination, despite a defendant's Sixth Amendment interests in presenting that testimony." United States v. Ramos, 763 F.3d 45, 53 (1st Cir. 2014). The burden on the witness is "not a particularly onerous" one. United States v. Castro, 129 F.3d 226, 229 (1st Cir. 1997). He must show that there is a "reasonable possibility that, by testifying, he may open himself to prosecution." Id. When a district court rules favorably on a witness's invocation of his Fifth Amendment right, we review its ruling for abuse of discretion. See id. Under this standard, we will reverse the district court's ruling "only when it is 'perfectly clear . . . that the answers [sought from the witness] cannot possibly incriminate.'" United States v. Acevedo-Hernández, 898 F.3d 150, 169 (1st Cir. 2018) (quoting United States v. De La Cruz, 996 F.2d 1307, 1312 (1st Cir. 1993) (alterations in original)).

At Vázquez-De León's change-of-plea hearing, he told the trial judge that he did not know Forty-Febres. Forty-Febres wanted Vázquez-De León to repeat this statement at trial. But Mena-Varella testified that Forty-Febres and Vázquez-De León were the two men who carjacked her. She identified both men at trial. Mena-Varella's testimony directly contradicts any statement that Vázquez-De León did not know Forty-Febres. On the record here, it is reasonable to suspect that, at trial, Vázquez-De León would be

compelled to testify that he did know Forty-Febres.  This testimony would constitute an admission that Vázquez-De León committed perjury at his change-of-plea hearing.  The trial judge recognized this risk when she said that Vázquez-De León has the "right not to have to admit that what he said during the plea is not true" and that she could not "expose this defendant to be[ing] charged with perjury" by forcing him to testify.  Cf. United States v. Zirpolo, 704 F.2d 23, 25 (1st Cir. 1983) ("Given the substantial evidence presented at the trial which contradicted the statements in [his] affidavit, it was hardly unreasonable for the district court to believe it possible that [the witness's] in-court testimony would tend to incriminate him of perjury.").

Forty-Febres's second argument on this point is that the district court erred by refusing to delay his trial until after Vázquez-De León was sentenced.  We review a refusal to grant a continuance for abuse of discretion.  See United States v. Rodriguez-Marrero, 390 F.3d 1, 22 (1st Cir. 2004).  In our review, we do not apply a mechanical test but instead "evaluate each case on its own facts."  Id. (quoting United States v. Torres, 793 F.2d 436, 440 (1st Cir. 1986)).

Forty-Febres argues that if the district court had delayed the trial and waited until after Vázquez-De León had been sentenced, any Fifth Amendment barriers to his testimony would have disappeared.  Not so.  Sentencing for the carjackings would

- 12 -

not have removed Vázquez-De León's risk of perjuring himself if he testified at Forty-Febres's trial. We have rejected reasoning like Forty-Febres's as "overly simplistic" because it "ignores what the government might bring up during cross examination that the conviction does not shield from criminal liability." Acevedo-Hernández, 898 F.3d at 169-70 (citing Castro, 129 F.3d at 229).

C.    Alleged Jury Inconsistency

Forty-Febres's final argument is that, because the jury convicted him of the charges related to carjacking Muriel-Colón but acquitted him of those related to carjacking Mena-Varella, the jury's verdict was inconsistent and his conviction should be vacated. We see no inconsistency. But even if we did, the argument misses the mark. As the Supreme Court has stated, "[c]onsistency in the verdict is not necessary." Dunn v. United States, 284 U.S. 390, 393 (1932); see also United States v. Powell, 469 U.S. 57, 69 (1984) (affirming Dunn and "insulat[ing] jury verdicts from review" on inconsistency grounds); United States v. Alicea, 205 F.3d 480, 484 (1st Cir. 2000). Precedent forecloses Forty-Febres's inconsistency argument.

**IV.**

Affirmed.